**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Robert W. LIKAS, Defendant-Appellee.**

**No. 18495.**

United States Court of Appeals,
Seventh Circuit.

June 9, 1971.

William J. Bauer, U. S. Atty., Michael P. Siavelis, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellant; John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys., of counsel.

George F. Callaghan, Chicago, Ill., for defendant-appellee.

Before FAIRCHILD and PELL, Circuit Judges, and GORDON, District Judge.

MYRON L. GORDON, District Judge.[1]

The appellee, Robert Likas, was indicted under 18 U.S.C. § 1952, it being charged that he used the United States mails in connection with gambling activities which were illegal under Illinois law. The district court granted his motion to suppress certain evidence seized during a search of his apartment on January 12, 1969, and the government has appealed.

An FBI agent, Logan Pickerl, obtained a warrant on January 11, 1969

1. The writer of this opinion is sitting by designation from the district court for the Eastern District of Wisconsin.

from the circuit court for Cook County to search the appellee's apartment in Oak Lawn, Illinois. The agent supported his application by averring that on at least two occasions in 1968 quantities of "flash paper" were mailed to the appellee from a company in Wisconsin; he also noted that "flash paper" is a highly inflammable substance which can be quickly destroyed. In addition, the agent stated that a reliable informer had, "on more than one occasion," been in the appellee's apartment and had observed the appellee record bets on what the informer "believed was flash paper but which could have been [water] soluble paper."

The warrant issued by the circuit court authorized a search for, and seizure of,

> "all implements, instruments and apparatus kept and used for unlawful gaming, to wit: records of race horse bets, scratch sheets, records of sports bets, sports schedules, bet pads, flash paper, soluble paper, telephones utilized in bookmaking, monies, miscellaneous gambling paraphernalia, or any evidence thereof which have been used in the commission of or which constitute evidence of gambling."

On January 12, 1969, Mr. Pickerl and three Cook County police officers proceeded to the appellee's apartment. Two of the officers noted that the search warrant listed flash paper as an item for which they were to search, and they then discussed means of preserving the evidence. After reaching the appellee's apartment building, the two police officers went directly to Mr. Likas' apartment and, without first announcing their presence or purpose, broke down the door to the apartment with a sledge hammer. When they entered the apartment, they met Mr. Likas coming from the living room, where he had been watching a football game on television; they then told him that they were police officers and gave him a copy of the search warrant. The ensuing search resulted in the discovery of about 2,000 sheets of flash paper.

18 U.S.C. § 3109 provides:

> "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

The government concedes that the search of the appellee's apartment did not comport with the language of § 3109. It argues, however, that the unannounced entry was warranted by the presence of "exigent circumstances" which justified non-compliance with the terms of the statute.

The United States Supreme Court has never broadened the application of § 3109 beyond its own restricted terms. See Note, 84 Harv.L.Rev. 1465, 1491 n. 125 (1971). On the other hand, the court "has left open the question of whether there may be exceptions to the requirements of section 3109 in certain circumstances." Bosley v. United States, 138 U.S.App.D.C. 263, 426 F.2d 1257, 1262 (1970). Sabbath v. United States, 391 U.S. 585, 591 n.8, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968), points out that Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), recognizes possible exceptions to any *constitutional* rule relating to an advance announcement; *Sabbath* also states that exceptions may exist to § 3019. See also Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). In addition, several courts of appeal have stated that exceptions exist to the operation of § 3109. See, *e. g.,* Miller v. United States, *supra*; Bosley v. United States, *supra*; Wittner v. United States, 406 F.2d 1165 (5th Cir. 1969); Der Garabedian v. United States, 372 F.2d 697 (5th Cir. 1966); Gilbert v. United States, 366 F.2d 923 (9th Cir. 1966).

In the case at bar, the government urges that the possibility that the flash

paper would be destroyed immediately following any announcement of purpose authorized the officers' unannounced intrusion. It is our opinion, however, that the government's position is incorrect under the facts presented, and we affirm the decision of the district court.

In so holding, we are not required to resolve the government's contention that its suggested exception would be consistent with fourth amendment requirements of reasonableness. Ker v. California, *supra*. We believe, instead, that the officers' conduct falls within the terms of the federal statute which imposes explicit requirements. Without deciding whether "exigent circumstances" may excuse adherence to § 3109, we find that the present record simply "does not reveal any substantial basis for excusing the failure of the agents * * * to announce their authority and purpose." Sabbath v. United States, *supra*, 391 U.S. at 591, 88 S.Ct. at 1759. See United States v. Case, 435 F.2d 766, 770 (7th Cir. 1970).

The appellee did not refuse to admit the officers; indeed, he was not given an opportunity to do so. Even if the use of force would be justified to effect entry in order to prevent the destruction of evidence, after admittance had been refused, such hypothesis is simply not applicable to the facts in the case at bar. The possible destruction of evidence in this situation is insufficient to condone the officers' actions, which are in clear derogation of the strictures of § 3109. In Miller v. United States, 357 U.S. 301, 313, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), the court stated:

> "We are duly mindful of the reliance that society must place for achieving law and order upon the enforcing agencies of the criminal law. But insistence on observance by law officers of traditional fair procedural requirements is, from the long point of view, best calculated to contribute to that end. However much in a particular case insistence upon such rules may appear as a technicality that inures to the benefit of a guilty person,

the history of the criminal law proves that tolerance of short-cut methods in law enforcement impairs its enduring effectiveness. The requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application. Congress, codifying a tradition embedded in Anglo-American law, has declared in § 3109 the reverence of the law for the individual's right of privacy in his house."

While we find that this case does not require us to pass upon the constitutionality of the government's proposed exception, a recent study of this subject concluded that:

> "* * * a magistrate should make the determination whether the no-knock entry is justifiable when the warrant authorizing the search is obtained." Note, 84 Harv.L.Rev. 1465, 1496 (1971).

See also Note, 80 Yale L.J. 139 (1970).

Affirmed.