STATE of Wisconsin, Plaintiff-Appellant-Petitioner,

v.

Bruce M. STEVENS, Defendant-Respondent.

Supreme Court

*No. 92–1557–CR. Oral argument October 12, 1993.—Decided February 8, 1994.*

(Also reported in 511 N.W.2d 591.)

413

414

For the plaintiff-appellant-petitioner the cause was argued by *Stephen W. Kleinmaier,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

For the defendant-respondent there was a brief by *Bonnie S. Musial* and *Julian, Musial, Wettersten & Friedrich, S.C.,* Madison and oral argument by *Bonnie S. Musial.*

STEINMETZ, J. The issues presented in this case are:

(1) Is the rule of announcement a constitutional requirement?

(2) Is a search of a residence for drugs, pursuant to a warrant, reasonable under the Fourth Amendment when the police do not comply with the rule of announcement but provide the following facts in the affidavit in support of the warrant: first, drugs that are easily disposed of are in the residence to be searched; second, drugs have been sold from the residence; and third, drug dealers are often armed?

(3) Did the police violate the defendant's *Miranda* rights by asking him questions concerning his name and place of residence before informing the defendant of his *Miranda* rights? Or, should this court adopt the "routine booking questions" exception to the *Miranda* requirements and apply the exception in this case?

On December 19, 1991, the Brown County Multi-Jurisdictional Group executed a search warrant for drugs and drug paraphernalia at 416 Mather Street in Green Bay. Based on evidence found during the search, the district attorney charged Bruce M. Stevens, the defendant, with possession of cocaine with intent to deliver in violation of secs. 161.01(4), 161.16(2)(b)1 and 161.41(1m)(c), Stats.

The court bound the defendant over for trial following a preliminary hearing. The defendant then moved to exclude evidence on the ground that the search warrant was executed illegally. The defendant also moved to suppress statements he made when the warrant was executed on the ground that he made the statements prior to being advised of his *Miranda* rights.

417

Following the suppression hearing, the Brown county circuit court, the Honorable Peter J. Naze, granted the defendant's motion to exclude the evidence seized in the search and to suppress the statements the defendant made while the police were in his residence executing the warrant. The court of appeals affirmed the order of the Brown county circuit court in *State v. Stevens,* 173 Wis. 2d 290, 496 N.W.2d 201 (Ct. App. 1992).

We reverse the court of appeals in part and find that the search was reasonable and the circuit court should not have excluded the physical evidence discovered during the search. We also affirm the court of appeals in part and find that the circuit court properly suppressed the statements made by the defendant before the police read him his *Miranda* warnings.

Several members of the Green Bay Police Department executed a search warrant at the defendant's home. The police did not request no-knock authorization in the warrant; therefore, the warrant did not authorize a no-knock entry. As planned, one of the officers, dressed as a pizza delivery man, drove into the driveway of the home and knocked on the door. No one answered. After knocking a second time, he said, "Domino's pizza. Got a pizza delivery." Someone inside responded, "We didn't order any pizza," or something to that effect, and later added, "Get real."

The officer again announced the pizza delivery but heard no response. When the police officers realized they were not going to gain entry as a result of this ruse, they proceeded to execute a dynamic entry. They first yelled, "Police, search warrant," then paused, forced the door open and entered. One officer estimated that it was four to five seconds from the time the police announced their identity and purpose until they

rammed the door open. The police officers secured the house in seven to ten seconds. The person inside the house who was closest to the door claimed she did not hear anyone yell, "Police, search warrant," or anything to that effect.

A lieutenant of the police department arrived shortly after the entry to find the defendant handcuffed and sitting on the floor. The lieutenant asked the defendant if he lived there and the defendant stated that he did. When the lieutenant next asked the defendant his name, the defendant at first responded, "Zeke," and then changed his answer to, "Bruce Stevens."

The lieutenant searched the house and discovered white powder that looked like cocaine along with drug paraphernalia in the bedroom. Upon returning to the dining area, the lieutenant told the defendant he was under arrest and asked the defendant if he had any controlled substances on him. The defendant said that he did in his left front pants pocket. The lieutenant reached in the pocket and pulled out four bindles.

The lieutenant also found shells in the defendant's pocket. When the lieutenant asked if he had a gun to go with the shells, the defendant said it was some place in the house. Then, the lieutenant advised the defendant of his *Miranda* rights for the first time. The defendant responded that he wanted an attorney.

After the defendant received his *Miranda* warnings, another police officer found .32 caliber bullets on the defendant. The police also seized a 20 gauge shotgun from the bedroom and a .32 caliber handgun along with five shells found elsewhere in the house.

At the suppression hearing, the trial court found that the police knocked the door down two to six seconds after announcing, "Police, search warrant."

419

The court granted the defendant's motion to exclude the evidence, stating that the pause between announcement and entry, two to six seconds, was very brief. Because a purpose of the rule of announcement is to give the owner a chance to respond and allow the officers to enter, the police had violated the rule. The court found that suppression of the evidence was the proper remedy for this violation of the rule of announcement.

The police lieutenant in charge of executing the warrant stated that due to the nature of the drug trade, the court should excuse the police from complying with the rule of announcement in such cases. In particular, he testified that he had executed approximately 90 search warrants in drug houses. In 85 to 90 percent of those houses, he had found weapons—sometimes assault weapons. The trial court refused to follow this "drug house" exception to the rule of announcement.

The court next addressed the admissibility of the statements the defendant made prior to receiving his *Miranda* warnings. The prosecutor conceded that the defendant's statements about having drugs in his pocket and a gun in his house were inadmissible. However, he argued that asking the defendant who he was and where he lived were booking questions that elicited admissible answers even though the lieutenant asked them before he read the defendant his *Miranda* warnings. The court rejected this argument and suppressed all of the defendant's pre-*Miranda* warning statements.

The ultimate question concerning the search of any residence is whether it is reasonable under the Fourth Amendment to the United States Constitution. The United States Supreme Court has also held that

the method of entry when executing a search warrant must be reasonable. *Ker v. California,* 374 U.S. 23, 38 (1963).

The Supreme Court has not, however, determined whether the rule of announcement is a constitutional requirement. This court has acknowledged that some commentators believe that *Ker* gave the rule a constitutional dimension.[1] On the contrary, only four justices in *Ker,* in fact, believed that compliance with the rule is a constitutional requirement. In dissenting in part, Justice Brennan stated:

> The protections of individual freedom carried into the Fourth Amendment . . . undoubtedly included this firmly established requirement of an announcement by police officers of purpose and authority before breaking into an individual's house.

*Id.* at 49.

The other five justices did not join Justice Brennan in his belief that the rule of announcement was a con-

---

[1] *See State v. Cleveland,* 118 Wis. 2d 615, 623, 348 N.W.2d 512 (1984) "In addition to its common law heritage, the rule of announcement is generally viewed as one of federal constitutional dimension. *Ker v. California,* 374 U.S. 23 (1963), is regarded as authority for the proposition that 'the rule of announcement is a constitutional requirement implicit in the fourth amendment proscription against unreasonable searches and seizures.' " (quoting Michael R. Sonnenreich and Stanley Ebner, *No-Knock and Nonsense, An Alleged Constitutional Problem,* 44 St. John's L. Rev. 626, 643 (1970)). *See also* Charles Patrick Garcia, Note, *The Knock And Announce Rule: A New Approach To The Destruction-Of-Evidence Exception,* 93 Colum. L. Rev. 685, 685 (1993) "The United States Supreme Court elevated this rule to a constitutional right thirty years ago in *Ker v. California.*".

stitutional requirement. In the Court's plurality opinion, Justice Clark, joined by three other justices, considered whether police entry, under a common law exception to California's statutory rule of announcement, was reasonable under the Fourth Amendment. The four justices concluded that the method of entry was reasonable. These justices did not examine whether a failure to comply with the rule of announcement would constitute an unreasonable entry under the Fourth Amendment. The ninth justice, Justice Harlan, concurred with Justice Clark's result, but relied on the fundamental fairness requirement from the due process clause of the Fourteenth Amendment, rather than the reasonableness standard of the Fourth Amendment.

In light of this split in the opinions, it is not accurate to say that in *Ker* the Supreme Court recognized that the rule of announcement is a constitutional requirement. As noted above, only four justices reached that result. In fact, since *Ker,* several courts have explicitly held that the rule is not a requirement of the federal Constitution. *See United States v. Nolan,* 718 F.2d 589, 601–02 (3rd Cir. 1983); *People v. Saechao,* 544 N.E.2d 745, 749 (Ill. 1989); *Commonwealth v. Gomes,* 556 N.E.2d 100, 102 (Mass. 1990).

Whether or not the rule of announcement is constitutionally mandated, it has been a common law requirement in Wisconsin.[2] *See Cleveland,* 118 Wis. 2d at 622–23; *State v. Moss,* 172 Wis. 2d 110, 115, 492 N.W.2d 627 (1992), *cert. denied,* 113 S. Ct. 1428 (1993). The rule has three primary justifications. *State v. Williams,* 168 Wis. 2d 970, 981–82, 485 N.W.2d 42 (1992).

---

[2] No statute in Wisconsin requires police to follow the rule of announcement.

First, it serves to protect the safety of police officers and others by warning the occupants of the officers' entrance. Second, it protects the occupants' limited privacy interests when the police already have a warrant. Third, it helps prevent the physical destruction of property.[3]

In *Cleveland*, 118 Wis. 2d at 622, this court explained that the rule of announcement requires "that police officers seeking to enter a dwelling in execution of a warrant must announce their presence (identity) and purpose and allow time for the door to be opened . . .." In essence, the rule requires the police to do three things before forcibly entering a home to execute a search warrant: 1) announce their identity; 2) announce their purpose; and 3) wait for either the occupants to refuse their admittance or, in the absence of an express refusal, allow the occupants time to open the door.

This court also recognized that under certain circumstances a search is reasonable under the Fourth Amendment even if the police dispense with the rule of announcement and execute a no-knock entry. Two such circumstances are when the police have a reasonable belief that announcement of police presence would endanger the safety of the police or others and when the police have a reasonable belief that unannounced

---

[3] The concurring opinion acknowledges these three justifications for the rule of announcement, along with a fourth—to provide an opportunity for the resident to indicate that the premises are mistakenly described in the warrant. However, the concurring opinion fails to defend these justifications. As this opinion later points out, in today's drug culture, these justifications are, for the most part, indefensible.

entry is required to prevent the destruction of evidence. *See id.* at 628, 631.

*Cleveland* required that in order to justify a no-knock entry, the police must be able to set forth the exigent circumstances with sufficient particularity to show reasonable cause to believe that the exigent circumstances exist. To justify no-knock entry to prevent the destruction of evidence under *Cleveland,* the police cannot rely on a "blanket" rule that no-knock entry is justified in all drug cases solely because narcotics, by their very nature, are easily destroyed. More information is needed. The officers must have particular grounds to provide them with reasonable cause to believe that in the specific case at hand, drugs will be destroyed. This court stated that an allegation that drugs had been sold on the premises is inadequate to provide reason to believe that the evidence will be destroyed if the police announce their presence prior to the search. *Id.* at 629–30.

*Cleveland* also stands for the proposition that the police cannot justify a no-knock entry by merely alleging that drug dealers are often armed, and hence, no-knock is necessary to protect the police and others. *Id.* at 631, n.16. Subsequently, in *Williams,* 168 Wis. 2d at 985, this court stated that the police have reasonable cause to make a no-knock entry when they have particular information that a person likely to be at the residence to be searched possesses firearms and a large quantity of drugs.

█

We now reexamine our holdings in *Cleveland* and *Williams.* We hold that when the police have a search warrant, supported by probable cause, to search a residence for evidence of delivery of drugs or evidence of possession with intent to deliver drugs (evidence of

drug dealing), they necessarily have reasonable cause to believe exigent circumstances exist.[4] Thus, in all such searches the police are justified in dispensing with the rule of announcement and making a no-knock entry.

In *Cleveland,* 118 Wis. 2d at 628, this court stated that "[t]he mere fact that drugs fall into a general category of materials that are by their nature capable of destruction does not justify unannounced entry to execute a search warrant." We now reject that holding. As we stated in *Cleveland,* drugs may be destroyed easily. Several jurisdictions have acknowledged that most drugs are easily disposed of using standard plumbing. *See United States v. Keene,* 915 F.2d 1164, 1168–69 (8th Cir. 1990), *cert. denied,* 498 U.S. 1102 (1991); *Henson v. State,* 204 A.2d 516, 519 (Md. 1964); *State v. Meyer,* 311 N.W.2d 520, 522–24 (Neb. 1981); *State v. Johnson,* 230 A.2d 831, 836–37 (R.I. 1967); *see also* Garcia, *The Knock And Announce Rule: A New Approach To The Destruction-Of-Evidence Exception,* 93 Colum. L. Rev. at 699. We now overrule *Cleveland* and find that the easily disposable nature of narcotics provides police with evidence sufficient to form a reasonable belief that no-knock entry is necessary to prevent the destruction of evidence.

In this case, the affidavit submitted to obtain the search warrant demonstrated that the police had probable cause to believe that cocaine would be found in the residence. The affidavit also showed probable cause to believe that the cocaine would be packaged in small,

---

[4] Evidence of prior sales, information from a police informant, or evidence of large quantities of drugs may lead to a presumption that a residence contains "evidence of drug dealing".

salable amounts that could be destroyed easily. The police had previously observed a supplier going to the residence, delivering bindles of cocaine to a police informant. Furthermore, the affidavit showed that approximately two ounces of cocaine were to be delivered to the residence on the day the police submitted the affidavit and executed the search.

The court of appeals in this case found that there were no exigent circumstances to allow a no-knock entry because nothing in the record indicated that the police had a particular reason to believe the drugs were about to be destroyed. *Stevens,* 173 Wis. 2d at 299. We reverse and hold that, due to the destructibility of the evidence, a no-knock search is reasonable any time the police have a warrant, supported by probable cause, to search a residence for "evidence of drug dealing". Under these circumstances, the police may dispense with the rule of announcement. At least six other courts have adopted such a "blanket" exception to the rule of announcement. *See People v. Lujan,* 484 P.2d 1238, 1241 (Colo. 1971); *Henson,* 204 A.2d at 519–20; *People v. De Lago,* 213 N.E.2d 659, 661 (N.Y. 1965), *cert. denied,* 383 U.S. 963 (1966); *Meyer,* 311 N.W.2d at 524; *State v. Loucks,* 209 N.W.2d 772, 777–78 (N.D. 1973); *State v. Spisak,* 520 P.2d 561, 562–63 (Utah 1974).

Some courts have limited this no-knock exception to cases in which the police are searching for drugs kept in small quantities. These courts believe that packaging the narcotics in small amounts increases the likelihood that the occupants will be able to destroy the drugs if the police announce their entry. *See State v. Thomas,* 604 So. 2d 1277, 1278–79 (Fla. App. 1992); *Armenteros v. State,* 554 So. 2d 574, 75 (Fla. App.

1989); *State v. Matos,* 605 A.2d 223, 224–25 (N.H. 1992); *State v. Stalbert,* 783 P.2d 1005, 1007 (Or. 1989). We reject this limitation to our newly adopted "blanket" exception to the rule of announcement. To allow the method of entry to be based on the packaging of the drugs would create a test without certainty.

This court, in a footnote in *Cleveland,* 118 Wis. 2d at 631, n.16, also found that the police did not demonstrate exigent circumstances with sufficient particularity to justify an unannounced entry when they could only show that drug dealers are often armed. The court stated: "The fact that a person is a member of a class of persons more likely to resist search is not sufficient to justify unannounced entry." *Id; see also Williams,* 168 Wis. 2d at 982. We now reject that holding.

■

Historically, the primary purpose of the rule of announcement was to decrease the potential for violence when the police execute a search warrant. Sonnenreich and Ebner, *No-Knock And Nonsense, An Alleged Constitutional Problem,* 44 St. John's L. Rev. at 647. The common belief has always been that the occupants of a home are less likely to react violently towards an intruder if the occupants are forewarned that the intruder is a police officer with a judicially issued warrant. *See State v. Carufel,* 314 A.2d 144, 147 (R.I. 1974); *People v. Dumas,* 512 P.2d 1208, 1213 (Cal. 1973). On the other hand, if the police break into a home unannounced, the occupants are more likely to assume the intruder is a criminal—in which case the occupants may be justified in confronting the intruder with a weapon. *See id.* In that case, the police are in turn more likely to respond with force against the occupants.

This rule of announcement rationale, on which the concurrence places great emphasis, is no longer valid in today's drug culture. In fact, by announcing their presence, police may actually increase the likelihood for violence. "[T]he law has 'uniformly . . . recognized that substantial dealers in narcotics possess firearms and that such weapons are as much tools of the trade as more commonly recognized drug paraphernalia.' " *United States v. Bonner,* 874 F.2d 822, 824 (D.C. 1989) (quoting *United States v. Payne,* 805 F.2d 1062, 1065 (D.C. 1986)).[5] "To avoid being arrested and punished for trafficking, drug dealers commit violent crimes against police . . .." Bureau of Justice Statistics, *A National Report: Drugs, Crime, and the Justice System,* at 5 (Dec. 1992). "Violence is [also] used to protect or expand markets, intimidate competitors, and retaliate against sellers or buyers who are suspected of cheating." *Id.* "The violence associated with drug trafficking today places law enforcement officers in extreme danger." *Williams,* 168 Wis. 2d at 984. Due to this "systemic" violence aimed at the police and rival drug dealers, when the police execute a search warrant, they may be putting themselves in more danger, rather than less, by announcing their presence before they enter.

Contrary to the historical notion that following the rule of announcement is more likely to prevent violence than executing a no-knock search, the opposite is more likely true. Police departments and commentators have determined that the police can decrease the possibility for violence during a search by taking control of the situation quickly. *See* Donald B. Allegro, Note,

---

[5] *See Payne,* 805 F.2d at 1065–66 for a list of many other cases in which courts have taken notice that drug dealers are often armed.

*Police Tactics, Drug Trafficking, and Gang Violence: Why the No-Knock Warrant Is an Idea Whose Time Has Come,* 64 Notre Dame L. Rev. 552, 556–57, n.29 (1989). This can best be accomplished using an unannounced, dynamic entry. "The element of surprise attending an unannounced entry allows the officers to enter and secure the premises before the suspect is able to gather his or her thoughts and possibly gun down the officers as they attempt to identify their presence and purpose." *Williams,* 168 Wis. 2d at 985–86.

The concurring opinion points out that neither violence towards police officers nor the disposability of drugs has increased since this court rejected a "blanket" exception to the rule of announcement in *Cleveland* and *Williams.* Accordingly, the concurring opinion argues that the court has no reason to overrule this precedent now. The concurrence fails to point out, however, that this court was not asked to adopt a "blanket" exception to the announcement rule in either *Cleveland* or *Williams.* In fact, the author of the concurring opinion acknowledged as much in *Cleveland,* 118 Wis. 2d at 628, stating: "Moreover, neither the defendant nor the state in this case asks this court to adopt a "blanket" rule . . .." In *Williams,* 168 Wis. 2d 970, the state argued successfully that particularized exigent circumstances existed and hence this court did not need to adopt a "blanket" rule in order to find the no-knock entry reasonable. In this case, for the first time, the state has explicitly asked that this court examine the underlying rationale for the rule of announcement and find that no-knock entry is reasonable any time the police execute a warrant to search for "evidence of drug dealing". After carefully analyzing the state's argument, we have decided to adopt this "blanket" rule.

In cases like this, where the police have a valid warrant, supported by probable cause, to search a home for "evidence of drug dealing", the officers executing the warrant have the incentive to choose the safest method of entry. Hence, in such cases, we will yield to the police officers' discretion in choosing whether or not to follow the rule of announcement. We overrule *Cleveland* and *Williams*[6] and hold that when the police request a warrant to search for "evidence of drug dealing", due to the inherent violence associated with drug dealing, the police need not offer particularized evidence of weapons to demonstrate that exigent circumstances exist justifying a no-knock search.[7]

We therefore reverse the court of appeals and find that in this case a no-knock entry was reasonable under the Fourth Amendment. Accordingly, the trial court should not have granted the defendant's motion to suppress the evidence found during the search. In searches for "evidence of drug dealing", we reject any requirement that the police wait a given amount of time before entering a residence. We advise, but do not

[6] In *Williams*, 168 Wis. 2d at 985, this court found a no-knock search reasonable based on particularized exigent circumstances. Thus, we only overrule *Williams* to the extent that *Williams* rejected the "blanket" approach to finding exigent circumstances in searches for "evidence of drug dealing".

[7] In *State v. Moss,* 172 Wis. 2d at 121, this court found an entry by means of a ruse valid. However, this court implicitly held that absent the use of a ruse and absent particularized exigent circumstances, a no-knock entry would not be reasonable. Thus, our holding today also overrules *Moss* to the extent that *Moss* generally reaffirmed the rule of announcement in searches for "evidence of drug dealing".

require, that the police announce their identity and purpose contemporaneously with their entry. While this practice is not necessary in such searches, it may help insure the safety of the police and others.

In this case, the police had sufficient knowledge to secure a no-knock warrant. The police intended to search for cocaine—an easily destructible drug. The police had information showing that the occupants of the residence were expecting to receive two ounces of cocaine. A police informant had purchased street quantities of cocaine from a supplier who went to the residence in question to obtain the drugs for the informant. Also, the police lieutenant knew from experience that the vast majority of drug houses contain weapons. In cases like this, when the police have probable cause to search a residence for "evidence of drug dealing", the warrant the police obtain carries with it no-knock authority.

Even in these cases, in which exigent circumstances to allow no-knock entry are present, the police must still obtain a search warrant unless additional "emergency" or exigent circumstances justifying a warrantless search exist. *See United States v. Rubin,* 474 F.2d 262 (3rd Cir.), *cert. denied,* 414 U.S. 833 (1973); *see also Vale v. Louisiana,* 399 U.S. 30 (1970). If the police enter a residence without a warrant, they will have to demonstrate to a judge at a suppression hearing, without the benefit of the deference given to a magistrate's pre-search determination, the following: 1) probable cause to search; and 2) emergency circumstances justifying a warrantless search.

The concurring opinion stresses that "[p]rivacy interests in a home are fundamental to our society's

431

understanding of human dignity." We share these sentiments. However, where the police have a warrant to search the property, the residents retain only a very limited interest in privacy. The warrant authorizes the police to enter the residence and search for evidence pursuant to the search warrant. *See* Sonnenreich and Ebner, *No-Knock and Nonsense, An Alleged Constitutional Problem,* 44 St. John's L. Rev. at 647. Even under the rule of announcement, after the police have announced their identity and purpose, the occupants must let them in within a reasonable time or the police may force their way in. The occupants' privacy interests are limited to knowing the police are entering and perhaps effecting the method of entry. The occupants do not have the right to refuse entry.

We balance this limited privacy interest against two other interests—the public's substantial interest in stopping or at least curtailing the drug trade and its related crimes, and the police officers' interest in protecting themselves and others from harm. When the police execute a search warrant for evidence of delivery of drugs or evidence of possession with intent to deliver, there is reasonable cause to believe both that the drugs will be destroyed and evidence lost and that the occupants of the residence will be armed. Assuming the police announce their identity and purpose simultaneously with their entrance, the occupants' privacy interests are infringed only to the extent that the occupants are not given the opportunity to open the door. Even when the police dispense with the entire knock and announcement, the societal interest in stopping the drug trade, combined with the police officers' safety interest, outweigh the occupants' limited privacy interests.

We now turn to the statements the defendant made to the police before receiving his *Miranda* warnings. The trial court suppressed several statements made by the defendant before the police apprised him of his *Miranda* rights. The state only challenges the court's determination regarding the defendant's responses to questions concerning his name and place of residence. For purposes of this opinion, we will assume that the defendant was in custody when these statements were made.[8]

Four justices of the United States Supreme Court recognized that questions directed to the defendant about biographical data, such as the defendant's name and address, that are not intended to elicit incriminating responses, may be considered routine booking questions that are exempted from the coverage of *Miranda v. Arizona,* 384 U.S. 436 (1966). *See Pennsylvania v. Muniz,* 496 U.S. 582, 601 (1990) (Brennan, J., plurality opinion). Based on this "routine booking questions" exception, the Court found several of the defendant's statements regarding biographical data admissible even though the defendant made the statements before being apprised of his *Miranda* rights.[9] Several courts have adopted a similar exception to the

[8] Before the trial court, the prosecutor conceded that the questions directed to the defendant would normally be covered by *Miranda*. Because *Miranda* only applies to statements made while in custody, this admission amounts to a concession that the defendant was in custody at the time he made the statements in question.

[9] Chief Justice Rehnquist concurred in the result. However, he did not apply the "routine booking questions" exception. Rather, he determined that the questions at issue were not testimonial and hence, the privilege against self-incrimination did not apply. *Muniz,* 496 U.S. at 608.

*Miranda* rule. *See United States v. Horton,* 873 F.2d 180, 181, n.2 (8th Cir. 1989); *United States v. Sims,* 719 F.2d 375, 378–79 (11th Cir. 1983); *United States ex rel. Hines v. LaVallee,* 521 F.2d 1109, 1113 (2nd Cir. 1975); *United States v. Disla,* 805 F.2d 1340, 1347 (9th Cir. 1986).

We adopt the "routine booking questions" exception to the *Miranda* rule. We next determine whether the defendant's statements, in this case, fall within the exception. We hold that they do not. The defendant made the statements regarding his name and residence during the arrest, not during the booking process. Although at least one court has applied the exception to statements made by a defendant while he was in a police car on his way to the police station, *LaVallee,* 521 F.2d at 1113, this court will not extend the exception to incriminating questions asked at the time of the arrest.

Furthermore, while it is impossible to determine the officer's intent from the record, it appears that the questions at issue may have been intended to elicit incriminating responses. Although the question concerning the defendant's name seems innocuous, it may actually have been incriminating. The affidavit submitted in support of the search warrant referred to one of the suspected drug dealers only as "Zeke." As a result, the defendant's answer to the question about his name, "Zeke" and then "Bruce Stevens," identified the defendant as the alleged drug dealer discussed in the affidavit.

In addition, by acknowledging that he lived at the house being searched, the defendant admitted that he lived at a residence where the police found drugs and weapons. In essence, his answer provided the police

evidence of his possession of drugs. *See Disla,* 805 F.2d at 1347. Finally, these two biographical questions may be viewed as part of a line of questioning that eventually led to inadmissible statements about the whereabouts of drugs and guns. Hence, we affirm the court of appeals' holding that the defendant's statements about his name and residence, made before he received his *Miranda* warnings, are inadmissible.[10]

We overrule *Cleveland,* 118 Wis. 2d 615, *Williams,* 168 Wis. 2d 970, and *Moss,* 172 Wis. 2d 110, and hold that when the police have probable cause through a warrant to search a residence for evidence of delivery of drugs or evidence of possession with intent to deliver drugs, exigent circumstances exist to allow the police to ignore the rule of announcement and execute a no-knock search. We reverse the court of appeals and find that the police officers' method of entry was reasonable. It is advisable, but not required, that the police announce their identity and purpose simultaneously with the entry for their own safety and the safety of others. In addition, we adopt the "routine booking question" exception to the *Miranda* rule, but do not apply it in this case. Because the defendant made the statements at issue prior to the booking process, and because the questions may have been intended to elicit incriminating responses, we affirm the court of appeals and find that the statements were properly suppressed.

*By the Court.*—The decision of the court of appeals is affirmed in part and reversed in part.

---

[10] The police would certainly have been able to obtain this information from the defendant during the booking process at the police station.

SHIRLEY S. ABRAHAMSON, J. *(concurring).* I agree with the state's position and the majority opinion that the search was constitutional and that the evidence of drugs should not be suppressed.

As the state and the majority make clear, this case fits within an exception to the knock-and-announce rule.[1] It is therefore unnecessary for the majority to reach out to overrule our prior cases dating back to at least 1926 and abandon the rule of announcement in search warrants for "evidence of drug dealing."

As the state asserts and the majority opinion explains, the police had probable cause in this case to believe that two ounces of cocaine were on the premises and that the cocaine would be packaged in small amounts. According to *State v. Cleveland,* 118 Wis. 2d 615, 629, 348 N.W.2d 512 (1984), and *State v. Williams,* 168 Wis. 2d 970, 982, 485 N.W.2d 42 (1992), information that the quantity of drugs involved could be readily destroyed is sufficient to authorize law enforcement officers to make a no-knock entry. In other words, the majority could have upheld the constitutionality of the search in this case on the basis of existing case law without abandoning the knock-and-announce rule.[2]

---

[1] The knock-and-announce rule requires that police officers seeking to enter a dwelling in execution of a warrant must announce their presence (identity) and purpose and allow time for the door to be opened, except when the occupants already are aware that the police are present, when an announcement would cause imminent danger to life, or when the officers have reason to believe that occupants would escape or evidence would be destroyed.

[2] The no-knock entry in *State v. Kerr,* 181 Wis. 2d 372, 511 N.W.2d 586 (1994), also can be upheld as fitting within an exception to the knock-and-announce rule. See State's Brief, pp 20–22. At the time the warrant was executed, the officers had

Precedents ought not to be overruled without clear justification. The majority opinion has not justified its blanket authorization of unannounced forcible entry to a home to search for "evidence of drug dealing."[3] Without evidence in support of its position—and with some empirical evidence in contradiction of it—the majority today decides to overturn a rule that has served important societal interests for a long time.[4] Equally

reasonable grounds to believe that the defendant, who was suspected of drug trafficking, was carrying a concealed weapon. *State v. Hanson,* 163 Wis. 2d 420, 424–25, 471 N.W.2d 301 (Ct. App. 1991); *State v. Watkinson,* 161 Wis. 2d 750, 468 N.W.2d 763 (Ct. App. 1991).

[3] One of the primary safeguards against general searches included in the Fourth Amendment is its requirement of particularity in "describing the place to be searched and the . . . things to be seized." U.S. Const. Amend. IV. Thus the constitution requires that the police articulate reasons justifying an individual search.

The majority opinion introduces the phrase "evidence of drug dealing," apparently to distinguish among searches for three types of evidence under sec. 161.41: (1) those relating to possession of controlled substances, (2) those relating to the possession of controlled substances for manufacture, and (3) those relating to possession of controlled substances for delivery. A significant body of case law has developed attempting to distinguish facts giving rise to a conviction for possession with intent to deliver instead of possession. The vagueness introduced by the phrase "evidence of drug dealing" threatens to erode the role of particularity in the search warrant process.

[4] The rule of announcement was adopted and has been retained because it serves four purposes: (1) It decreases the potential for violence by alerting a resident that a police officer is legitimately on the premises; (2) it protects a resident's right to be free from unexpected, frightening, and embarrassing intrusions into the privacy of the home; (3) it prevents the physical destruction of the home by giving a resident the opportunity

437

injudiciously, the majority sets forth an exception to the rule of announcement so broad that it potentially encompasses numerous crimes. In many searches a claim can be made that the evidence sought can easily be destroyed or expunged (for example, evidence of gambling) or involves crimes associated with weapons.

Privacy interests in a home are fundamental to our society's understanding of human dignity. Still, these interests must be balanced against the risk that evidence will be destroyed or law enforcement officers will be harmed. It is possible that the times require some adjustment of the balance, but I am not convinced that the times demand discarding the scales entirely.

## I.

The rule of announcement is not unique to Wisconsin jurisprudence. Its common law history goes back nearly 400 years.[5] The United States Supreme Court

---

to admit the officer voluntarily; and (4) it provides an opportunity for a resident to indicate that the premises are mistakenly described in the warrant. For a detailed discussion of the purposes of the rule of announcement, see Note, *Announcement in Police Entries,* 80 Yale L.J. 139, 140–142 (1970).

[5] The requirement of notice has been traced back as far as the decision in *Semayne's Case,* 5 Coke Rep. 91a, 91b, 11 Eng. Rul. Cas. 629, 631, 77 Eng. Rep. 194, 195 (1603), a civil case. In 1756 in the *Case of Richard Curtis,* Fost. 135, 168 Eng. Rep. 67, 68 (K.B. 1757), the court unanimously held that "peace officers, having a legal warrant to arrest for a breach of the peace, may break open doors, after having demanded admittance and given due notice of their warrant."

American courts began speaking of the necessity of giving notice in the execution of a search warrant as early as 1813 in *Bell v. Clapp,* 10 Johns.R. 263 (N.Y. Sup. Ct. 1813).

For discussions of the rule of announcement, including the history, *see Miller v. United States,* 357 U.S. 301, 306–310

has described the rule of announcement as "deeply rooted in our heritage" and as a "tradition embedded in Anglo-American law." *Miller v. United States,* 357 U.S. 301, 313 (1958).

The rule of announcement became a federal statutory requirement for federal law enforcement officers in 1917 and is embodied in federal statutes today.[6] Commentators and the courts generally accept the rule of announcement as a rule of constitutional dimension,[7] although some disagree.[8]

---

(1958); *Accarino v. United States,* 179 F.2d 456, 460–465 (D.C. Cir. 1949); 2 LaFave, *Search and Seizure,* sec. 4.8(a) (2d ed. 1987); Charles Patrick Garcia, *The Knock and Announce Rule: A New Approach to the Destruction-Of-Evidence Exception,* 93 Colum. L. Rev. 685 (1993); Donald B. Allegro, *Police Tactics, Drug Trafficking, and Gang Violence: Why the No-Knock Warrant Is an Idea Whose Time Has Come,* 64 Notre Dame L. Rev. 552 (1989); Sonnenreich and Ebner, *No-Knock and Nonsense, An Alleged Constitutional Problem,* 44 St. John's L. Rev. 626 (1970); Blakey, *The Rule of Announcement and Unlawful Entry: Miller v. United States and Ker v. California,* 112 U. Pa. L. Rev. 499 (1964); Note, *Announcement in Police Entries,* 80 Yale L.J. 139 (1970).

[6] 18 U.S.C. § 3109, which deals with the execution of search warrants by federal officers, states:

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in execution of the warrant. 18 U.S.C. § 3109 (1993).

[7] *Ker v. California,* 374 U.S. 23 (1963), is regarded as authority for the proposition that "the rule of announcement is a constitutional requirement implicit in the fourth amendment proscription against unreasonable searches and seizures." Sonnenreich and Ebner, *No-Knock and Nonsense, An Alleged Constitutional Problem,* 44 St. John's L. Rev. 626, 643 (1970).

*See also,* Note, *The Knock and Announce Rule: A new Approach to the Destruction-of-Evidence Exception,* 93 Colum. L. Rev. 685, 697–698 (1993) (it is generally recognized that absent exigent circumstances, a police officer's failure to knock-and-announce violates the fourth amendment.); Note, *Police Tactics, Drug Trafficking, and Gang Violence: Why the No-Knock Warrant Is an Idea Whose Time Has Come,* 64 Notre Dame L.Rev. 552, 564 (1989) (the general consensus is that under the fourth amendment exigent circumstances must exist to escape the rule); Note, *No-Knock and the Constitution: The District of Columbia Court Reform and Criminal Procedure Act of 1970,* 55 Minn. L. Rev. 871, 884 (1970–71) ("the rule of announcement is a constitutional requirement implicit in the fourth amendment proscription against unreasonable searches and seizures"); Note, *Announcement in Police Entries,* 80 Yale L.J. 139, 146 (1970) (the fourth amendment incorporates the rule of announcement); *Rivera v. United States,* 928 F.2d 592, 606 (2d Cir. 1991) (fourth amendment requires reasonable effort to provide actual notice of identity and imminent entry); *State v. Carufel,* 314 A.2d 144, 147 (R.I. 1974) (the knock-and-announce requirement is embodied in the fourth amendment); *Commonwealth v. Newman,* 240 A.2d 795, 798 (Penn. 1968) (forcible entry without announcement of purpose violates the fourth amendment); *People v. Gastelo,* 432 P.2d 706, 708 (Cal. 1967) (under the fourth amendment, a specific showing must always be made to justify unannounced forcible entry).

[8] *See, e.g.,* George E. Dix, *Means of Executing Searches and Seizures as Fourth Amendment Issues,* 67 Minn. L. Rev. 89, 100 (1982–83) (the United States Supreme Court no-knock cases reflect a careful effort to avoid addressing the extent, if any, to which the fourth amendment requirement of reasonableness embodies any such advance notice requirement); *United States v. Nolan,* 718 F.2d 589, 601 (3rd Cir. 1983) (the fourth amendment is implicated by knock-and-announce only "by the overall reasonableness of the state's statutory scheme as applied by law enforcement officers."); *Commonwealth v. Goggin,* 412 Mass.

The rule of announcement has been part of Wisconsin law at least since 1926,[9] and has been expressly and unanimously reaffirmed by this court in two recent drug cases. In 1984 the court discussed and applied the rule in *State v. Cleveland,* 118 Wis. 2d 615, 348 N.W.2d 512 (1984). In 1992 the court further explained, elaborated on, and applied the rule and its exceptions in *State v. Williams,* 168 Wis. 2d 970, 485 N.W.2d 42 (1992). In still another 1992 case, *State v. Moss,* 172 Wis. 2d 110, 492 N.W.2d 627 (1992), the court implicitly reaffirmed the rule of announcement.

In light of this history, the rule of announcement should not be abandoned without strong justification. Fidelity to precedent, the doctrine of *stare decisis* "stand by things decided", is fundamental to "a society governed by the rule of law." *Akron v. Akron Center for Reproductive Health, Inc.,* 462 U.S. 416, 420 (1983). When legal standards "are open to revision in every case, deciding cases becomes a mere exercise of judicial will, with arbitrary and unpredictable results." *Appeal*

---

200, 587 N.E.2d 785 (1992) ("[o]ur knock and announce rule is one of common law which is not constitutionally compelled").

[9]*See Hiller v. State,* 190 Wis. 369, 209 N.W. 260 (1926), overruled on other grounds, *Glodowski v. State,* 196 Wis. 265, 280 N.W. 260 (1928) (officer with warrant searching for unlawful intoxicating liquors was justified in pulling hook off screen door in order to secure entrance where circumstances led him to believe that attempt was being made to destroy the liquor); *Morales v. State,* 44 Wis. 2d 96, 170 N.W.2d 684 (1969) (when seeking entrance to a dwelling to execute a warrant, police officers must identify themselves and, except under special circumstances, allow time for the door to be opened); *State v. Suits,* 73 Wis. 2d 352, 243 N.W.2d 206 (1976) (strict adherence to the rule of announcement is not required when the circumstances encountered by the officer at the time of execution of the warrant justify a departure from the rule).

*of Concerned Corporators of Portsmouth Savings Bank,* 129 N.H. 183, 227, 525 A.2d 671 (1987) (Souter, J. dissenting, quoting *Thornburgh v. American College of Obstetricians and Gynecologists,* 476 U.S. 747, 786–87 (1986), White, J. dissenting).

Alongside the doctrine of *stare decisis* is a second generally accepted principle, namely that the common law must accommodate to changing circumstances. *Schwanke v. Garlt,* 219 Wis. 367, 371, 263 N.W. 176 (1935); *Bielski v. Schulze,* 16 Wis. 2d 1, 11, 114 N.W.2d 105 (1962); *Prah v. Maretti,* 108 Wis. 2d 223, 237–238, 321 N.W.2d 182 (1982).

The doctrine of *stare decisis* and the dynamic aspect of the common law are harmonized by a third generally accepted principle: A court's decision to depart from precedent is not to be made casually. It must be explained carefully and fully to insure that the court is not acting in an arbitrary or capricious manner. A court should not depart from precedent without sufficient justification. Justification for departure from precedent could include changes or developments in the law that undermine the rationale behind a decision; the need to make a decision correspond to newly ascertained facts; or a showing that the precedent has become detrimental to coherence and consistency in the law.[10] No change in the law is justified by "a change in the membership of the court or a case with more egregious facts." *Welch v. State Farm Mut. Auto Ins.,* 122 Wis. 2d 172, 182, 361 N.W.2d 680 (1985) (Steinmetz, J. dissenting).

---

[10]*See, e.g., Patterson v. McLean Credit Union,* 491 U.S. 164, 173 (1989); *Arizona v. Rumsey,* 467 U.S. 203, 212 (1984); *Burnet v. Coronado Oil & Gas Co.,* 285 U.S. 393, 412 (1932) (Brandeis, J. dissenting).

I do not join the majority opinion because it neither explains nor justifies its abandonment of long-standing precedent in this case.

## II.

The majority opinion at 428 asserts that "the rule of announcement rationale is no longer valid in today's drug culture," first because of the ease with which drugs can be destroyed, 181 Wis. 2d 425, and second because many drug dealers have guns and "commit violent crimes" against police, 181 Wis. 2d 425. But the majority opinion offers no credible support for its assertion that the rationale for the rule of announcement is no longer valid in searches for "evidence of drug dealing."[11] I shall discuss each of its pronouncements in turn.

## A.

This court has long acknowledged that small amounts of narcotics can be destroyed quickly. Thus in *State v. Cleveland,* 118 Wis. 2d 615, 629, 348 N.W.2d 512 (1984), we held that the police executing a search warrant may enter a residence without announcing themselves when they have information that

---

[11] Section 902.01 governs judicial notice of adjudicative facts. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (a) generally known within the territorial jurisdiction of the trial court or (b) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Section 902.01(2), Stats. 1991–92.

For a discussion of judicial notice of legislative facts, see Peggy C. Davis, *"There is a Book Out . . .": An Analysis of Judicial Absorption of Legislative Facts,* 100 Harv. L. Rev. 1539 (1987).

announcement might result in the destruction of drugs.[12] See also *State v. Williams,* 168 Wis. 2d 970, 982, 485 N.W.2d 42 (1992). Evidently the majority has determined that drug dealers have become so sophisticated since *Cleveland* and *Williams* were decided that all drugs irrespective of quantity can be readily destroyed and that therefore a no-knock entry in drug cases is always justified. I can find no credible support for this thesis in either the majority opinion or the cases and law reviews I have examined.

The majority cites as persuasive authority that six state courts have adopted a "blanket" exception to the rule of announcement because of the destructibility of drugs. In reality, three of the six cases cited do not adopt a "blanket rule;" they merely conclude that the state statute authorizing no-knock entries for drugs does not violate the constitution.[13] Furthermore, all six cases cited predate *Cleveland* and *Williams.*

Many courts around the country, when faced with similar assertions about the destructibility of drugs, have refused to create a blanket rule authorizing unannounced entry by police in drug cases.[14] As the Eighth

---

[12] We said in *Cleveland* that the particular information could include "the quantity of drugs expected to be discovered and that this amount is readily destroyed if announcement is made, or the preparations that have been made to facilitate the destruction of the drugs, or the defendant's destruction of drugs during a previous attempt to search the premises." 118 Wis. 2d 629.

[13] *People v. De Lago,* 213 N.E.2d 659, 661 (N.Y. 1965), cert. denied, 383 U.S. 963 (1966) (case involved gambling); *State v. Loucks,* 209 N.W.2d 772, 777–78 (N.D. 1973); *State v. Spisak,* 520 P.2d 561, 562–63 (Utah 1974).

[14] *See, e.g., United States v. Wulferdinger,* 782 F.2d 1473, 1476 (9th Cir. 1986); *United States v. Stewart,* 867 F.2d 581 (10th Cir. 1989); *United States v. Likas,* 448 F.2d 607, 609 (7th

Circuit court of appeals explained in 1992, "a blanket rule permitting no-knock search warrants in all drug cases, regardless of whether the forms and quantities suspected to be present can be readily destroyed, is patently unjustifiable and would invite unnecessary violent and intrusive execution of many search warrants." *United States v. Moore,* 956 F.2d 843, 850 (8th Cir. 1992).

Drugs are no less easily destroyed in any of these jurisdictions than they are in Wisconsin. Indeed, the majority has cited no evidence in support of its assertion that drugs are always readily destroyable and always likely to be destroyed in the few moments required for police to comply with the rule of announcement when executing a search warrant.

### B.

The majority declaration that "the rule of announcement rationale is no longer valid in today's drug culture" because many drug dealers have guns

Cir. 1971); *Reynolds v. Alabama,* 238 So.2d 557, 559–560 (Ala. Cr. App. 1970); *Arizona v. Bates,* 587 P.2d 747, 749 (Ariz. 1978); *California v. Gastelo,* 432 P.2d 706, 708 (Cal. 1967); *Connecticut v. Anonymous,* 480 A.2d 600, 605 (Conn. Super. Ct. 1984); *Indiana v. Dusch,* 289 N.E.2d 515, 518 (Ind. 1972); *Crabtree v. State,* 479 N.E.2d 70, 74 (Ind. App. 1985); *Illinois v. Ouellette,* 401 N.E.2d 507, 510 (Ill. 1979); *Massachusetts v. Gomes,* 556 N.E.2d 100, 101–02 (1990); *Massachusetts v. Scalise,* 439 N.E.2d 818, 823 (Mass. 1982); *State v. Matos,* 605 A.2d 223, 224 (N.H. 1992); *State v. Sundel,* 402 A.2d 585, 588 (R.I. 1979); *Rhode Island v. Carufel,* 314 A.2d 144, 148 (R.I. 1974); *Heaton v. Virginia,* 207 S.E.2d 829, 831 (Va. 1974); *Washington v. Jeter,* 634 P.2d 312, 314 (Wash. 1981).

Professor LaFave does not favor a blanket rule. See 2 LaFave, Search and Seizure at 280–84 (2d ed. 1987).

and commit violent crimes against police, 181 Wis. 2d 428, is buttressed with citations to two federal cases, both of which *predate* our *Williams* and *Moss* decisions reaffirming the rule of announcement. The majority even attempts to get support from quoting the *Williams* case itself, 181 Wis. 2d 428. The majority also quotes, 181 Wis. 2d 428, from a sentence about violence against police which appeared in a 1992 Bureau of Justice Report.[15] The part of the sentence quoted is substantially similar to material from an Attorney General's report relied on in *Williams* where, as we have noted, the rule of announcement was reaffirmed.

Thus the majority opinion on its face demonstrates that it has discovered nothing new. It points to no experiences, changes or developments subsequent to *Cleveland* or *Williams* that undermine the rationale of those decisions. It furnishes no newly ascertained facts demonstrating the need to change a rule that has been applied in Wisconsin since at least 1926. Nor does it claim that the precedents have become a detriment to coherence and consistency in the law. In short, the majority presents no justification for overturning settled law in this state.

### III.

As this court recognized in *Cleveland* and *Williams,* crime and violence can all too frequently be traced to drugs. In *Cleveland* and *Williams* the court carefully permitted no-knock entries that would safeguard both the public and law enforcement officers and prevent destruction of evidence of drugs. In fact, in

---

[15] Neither the Report nor its separate volume entitled Technical Appendix offers factual support for this sentence or relates expressly to violence to law enforcement officers on an execution of a search warrant.

*Cleveland* the state explored in its brief, and this court expressly considered and rejected, the blanket rule the court adopts today. *State v. Cleveland,* 118 Wis. 2d at 628; Brief of the Attorney General, State v. Cleveland, pp. 37–38. *See also, United States v. Singer,* 943 F.2d 758 (7th Cir. 1991).

As stated above, the majority offers no justification for its adoption of a blanket rule abandoning the rule of announcement in warrants to search for "evidence of drug dealing," and the only empirical evidence I can find undermines the majority's rationale. Indeed, an examination of the federal experience with no-knock warrants and both national and Wisconsin statistics regarding violence against police suggests that little may be gained and much may be lost by abandoning the rule of announcement in cases involving "evidence of drug dealing."

First, a federal attempt to respond to increasing drug-related crime and violence in the early 1970s by relaxing search regulations miscarried. A 1970 federal statute authorizing no-knock warrants became, according to one senator, "an invitation to official lawlessness."[16] After two no-knock drug raids on innocent households in Collinsville, Illinois,[17] the Drug Enforcement Administration issued guidelines requiring high

---

[16] See 120 Cong. Rec. 22, 898 (1974). For discussions of the 1970 statute, *see e.g.,* Note, *No-Knock and the Constitution: The District of Columbia Court Reform and Criminal Procedure Act of 1970 [A Critique and Proposed Alterations],* 55 Minn. L. Rev. 871 (1971); Note, *Announcement in Police Entries,* 80 Yale L. J. 139 (1970); Note, *Unannounced Entry to Search: The Law and the 'No-Knock' Bill (S.3246),* 1970 Wash. U. L. Q. 204.

[17] See Andrew H. Malcolm, Violent Drug Raids Against the Innocent Found Widespread, N.Y. Times, June 25, 1973, at A1. The article cites several examples of mistaken, surprise, unan-

level approval before federal agents could request a no-knock warrant. The federal statute authorizing no-knock warrants was repealed in 1974.

Second, FBI national crime statistics do not bear out the majority's contention that law enforcement officers executing search warrants for drugs are in more danger today than they were in 1992, when *Williams* was decided, or even in 1984, when *Cleveland* was decided. National statistics show that from 1978 to 1991 the total number of officers killed on duty actually declined. When comparing 1978–81 to 1987–91, the number of officers killed in situations involving drug matters also declined. From 1987 through 1991 more law enforcement officers were killed in domestic violence incidents than in drug-related situations.[18]

nounced raids by federal, state and local law enforcement agents, including one in which a police officer was killed.

[18] According to the 1992 Sourcebook of Criminal Justice Statistics, Hindelang Criminal Justice Research Center, the statistics on federal, state and local law enforcement officers murdered are as follows:

| Time Period | Total Officers Murdered | #/% by Type of Situation | | |
| --- | --- | --- | --- | --- |
| | | Drug Matters | Domestic Violence | Handling Prisoners |
| 1987–91 | 355 | 31/8.7% | 37/9.6% | 24/6.8% |
| 1982–86 | 388 | 28/7.2% | 22/5.7% | 18/4.6% |
| 1978–81 | 394 | 53/5.8% | 20/5.1% | 12/3.0% |

In 1991, 3 officers were killed in drug-related matters; 9 were killed in domestic violence situations; 6 were killed while handling or transporting prisoners in custody.

The percentage of officers killed in drug-related situations increased somewhat from 1978 to 1991, but not as much as the percentage of officers killed while handling or transporting prisoners in custody. The percentage of officers killed while

448

Third, the statistical picture in Wisconsin is similar. It is evident from state statistics that the number of law enforcement officers killed feloniously in the line of duty has not been rising.[19] Half as many officers were killed deliberately during the 1980s as were killed in the 1970s. Nor has the number of officers assaulted with firearms been increasing. According to the Wisconsin statistics, more assaults with firearms occurred in the 1970s than in more recent years.[20]

While the death or injury of even one law enforcement officer is one too many, the empirical evidence undermines the majority's rationale.

---

handling or transporting prisoners in custody doubled during that same period.

[19] According to the Wisconsin Office of Justice Assistance, before 1982 the circumstances of the deaths were not recorded. Since then, in 1985 the deaths of two officers in a single incident appeared to be directly related to drug activity. The officers were killed after they stopped three men on a street in Milwaukee on suspicion of dealing drugs.

The statistics regarding the felonious deaths of police officers in Wisconsin indicate the following:

| Year/ decade | Officers killed | Year/ decade | Officers killed |
|---|---|---|---|
| 1993 | 0 | 1950s | 4 |
| 1992 | 0 | 1940s | 4 |
| 1991 | 2 | 1930s | 13 |
| 1990 | 3 | 1920s | 6 |
| 1980s | 7 | 1910s | 9 |
| 1970s | 16 | 1900s | 3 |
| 1960s | 9 | | |

[20] According to the Wisconsin Office of Justice Assistance, the figures on assaults with firearms against law enforcement officers are as follows:

449

## IV.

I agree that rules regulating police conduct should be reexamined to ensure that the common law rules adopted by this court continue to make sense. Although the rule of announcement was reaffirmed as recently as 1992, we are nevertheless free to re-examine it in

| Year | Assaults with Firearms | Resulting in Injury |
|------|------------------------|---------------------|
| 1992 | 21 | 13 |
| 1991 | 7 | 2 |
| 1990 | 18 | 8 |
| 1989 | 14 | 6 |
| 1988 | 7 | 5 |
| 1987 | 7 | 2 |
| 1986 | 12 | 4 |
| 1985 | 14 | 5 |
| 1984 | 10 | 3 |
| 1981–1983 unavailable | | |
| 1980 | 19 | 6 |
| 1979 | 19 | 6 |
| 1978 | 23 | 8 |
| 1977 | 66 | 7 |
| 1976 | 27 | 10 |
| 1975 | 32 | 10 |
| 1974 | 23 | 9 |
| 1973 | 37 | 18 |
| 1972 | 42 | 7 |
| 1971 | 19 | 8 |
| 1970 | 22 | 3 |

The records collected by the Wisconsin Office of Justice Assistance do not provide information indicating in detail the circumstances of these assaults, so we do not know what proportion of them are drug related or whether any occurred during the execution of search warrants.

450

1993. However, after considering the majority's arguments, the available empirical evidence, and the traditional justifications for the rule of announcement, I conclude that no clear justification for overturning the settled law of this state presently exists.

In the absence of clear justification to depart from precedent, the doctrine of *stare decisis* should prevail.

Equally important, however, is the fact that the interests served by the rule of announcement are as vital today as they were in 1926 and when *Cleveland* and *Williams* were decided. 2 LaFave, Search and Seizure at 272–73 (2d ed. 1987). Chief among those interests are the prevention of violence and the protection of privacy.

As I have written previously, "[a] suspect's access to a firearm means that the firearm may be used against law enforcement officers. On the other hand, a suspect may be less likely to shoot at police officers who identify themselves as such and more likely to shoot at what the suspect may view as unidentified intruders breaking into a residence." *State v. Williams,* at 992 (Abrahamson, J., concurring).[21]

When police storm into a home, they are likely to find its occupants in various states of undress, in bed, or in the bathroom.[22] Children are likely to be present. Thus the privacy rights protected by requiring the

---

[21] The federal Bureau of Alcohol, Tobacco, and Firearms estimates that there are approximately 200 million firearms in the nation, about one per person. *State v. Williams,* 168 Wis. 2d 970, 992 (1992) (Abrahamson, J., concurring). A 1993 survey estimates that 55 per cent of the people in Wisconsin have guns. Wis. St. J. 12/12/93, p.2C.

[22] *See, e.g.,* Andrew H. Malcolm, Violent Drug Raids Against the Innocent Found Widespread, N.Y. Times, June 25, 1973, at A1. *See also* 120 Cong. Rec. 15, 171 (1973).

police to announce their identity and their purpose include the occupant's right to put on a robe and to prevent the children from being frightened.

Our concerns for police safety and the struggle to balance police power against individual freedom are as old as the. organization of police forces and fourth amendment jurisprudence itself.[23] But as dissenting Justice Thurgood Marshall wrote in *Skinner v. Railway Labor Executive Association,* 489 U.S. 602, 635 (1989): "History teaches that grave threats to liberty often come in times of urgency, when constitutional rights seem too extravagant to endure . . .. [W]hen we allow fundamental freedoms to be sacrificed in the name of real or perceived exigency, we invariably come to regret it."

For the reasons set forth, I concur.

I am authorized to state that Chief Justice NATHAN S. HEFFERNAN joins this opinion.

---

[23] For a history of the criminal justice system in the United States, see Lawrence M. Friedman, *Crime and Punishment in American History* (1993).