STATE of Wisconsin, Plaintiff-Appellant,†

v.

Bruce M. STEVENS, Defendant-Respondent.

Court of Appeals

*No. 92-1557-CR. Submitted on briefs November 30, 1992.—Decided December 15, 1992.*

(Also reported in — N.W.2d —.)

† Petition to review granted.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James E. Doyle,* attorney general and *Stephen W. Kleinmaier,* assistant attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Bonnie S. Musial* of *Julian, Musial, Wettersten & Friedrich, S.C.* of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   The state appeals an order suppressing Bruce Stevens' statement and evidence seized following the search of his apartment that was authorized by warrant but allegedly executed in violation of the announcement rule. The state contends that the court erred by declaring the search invalid because the police violated the announcement rule and by suppressing Stevens' statements revealing his identity and where he lived. The state argues that the police complied with the announcement rule. In the alternative, it argues that if the police failed to comply, the entry into and search of Stevens' apartment was reasonable under the fourth amendment to the United States Constitution. In any event, the state argues, suppression of the evidence is an inappropriate remedy because the evidence was seized under a validly issued warrant. Finally, the state argues that *Miranda v. Arizona*, 384 U.S. 436 (1966), does not require suppression of Stevens' responses to the routine booking questions concerning his name and residence. Because we conclude that the warrant was executed in violation of the announcement rule, suppression of the evidence seized as a result of the invalid search is proper and Stevens' responses to questions concerning his identity and residence were obtained in violation of his constitutional rights, we affirm the order.

Green Bay police obtained a search warrant for the lower apartment at 416 Mather Street because they demonstrated they had probable cause to believe cocaine and cocaine-dealing paraphernalia were located within the residence. The police planned to execute the warrant by inducing the occupants to open the door in response to a police officer posing as a pizza delivery person. If the ruse was unsuccessful, the police planned a "dynamic

entry," defined as the police entering the home as quickly as possible with overwhelming force. The purpose behind a dynamic entry is to enter before the occupants can react, reducing the chance of injury to the occupants or police.

Lieutenant Robert Boncher, who was in charge of the warrant execution, testified that he had executed ninety drug warrants in the past. He claimed that in the majority of these police had found weapons in the house. However, the police had no knowledge that there were weapons in the Mather Street residence and the warrant did not include a search for weapons.

Officer Robert Klika posed as a pizza delivery person and knocked on the door of the residence. He announced that he had a pizza delivery for Joe Wokums. A female voice told him, "We didn't order any pizza." Valeata Lappen, the woman who lived at the house, stood by the door but would not open it. Klika knocked three more times, telling Lappen that the pizza was getting cold. Lappen testified that immediately after the fourth knock, she heard a loud bang and the police were inside the house yelling, "Everybody down on the floor." The police had broken down the door and its frame. Lappen further testified that she was always within four feet of the door and that at no time did she hear anyone say, "Police, search warrant."

Klika testified that after he knocked several times at the door to no avail, he tried to open the inside door and found that it was locked. He then signalled the tactical team to break the door down with a battering ram. He further testified that the tactical team yelled, "Police, search warrant," before they broke the door down and entered the apartment.

Inside the apartment, the police found cocaine and cocaine-dealing paraphernalia, as well as several weap-

ons. Lieutenant Gaylord Baudhuin entered the apartment after it was secured and showed Stevens the search warrant. Baudhuin then testified that he asked Stevens "if he lived there." Stevens replied that he did. After asking Stevens his name, Baudhuin asked him if he "had any controlled substances on him." Stevens replied that he had drugs in his pants pocket. Baudhuin retrieved the drugs from Stevens' pocket and then read him his *Miranda* rights.

Stevens moved the trial court to suppress evidence seized from the apartment and his statements following the police entry. Various police officers who were on the scene testified concerning the length of time that elapsed between the police yelling, "Police, search warrant," and the time they broke the door down. The testimony about the time ranged from a pause to two to five seconds. The trial court found that the time between the announcement and the forcible entry was at most five or six seconds, but could have been as little as two seconds or a pause.

The court concluded that the warrant was validly issued, but that the execution violated the announcement rule. The court therefore suppressed all of the evidence seized from the apartment and all of Stevens' statements following the entry.

■■■■

Whether the search was reasonable and complied with the requirements of the fourth amendment to the United States Constitution is a question of constitutional fact that we review as a question of law without deference to the trial court's conclusions. *State v. Williams*, 168 Wis. 2d 970, 980-81, 485 N.W.2d 42, 46 (1992). The fourth amendment's proscription against unreasonable searches and seizures requires not only the existence of probable cause to conduct the search but

295

also that the search be conducted in a reasonable manner. *Id.*

The announcement rule, set forth in *State v. Cleveland*, 118 Wis. 2d 615, 622, 348 N.W.2d 512, 517 (1984), and reaffirmed in *Williams*, 168 Wis. 2d at 981, 485 N.W.2d at 46, dictates the manner in which the government may legitimately intrude. The rule requires police officers seeking to enter a dwelling to execute a search warrant to announce their identity and purpose and allow time for the occupants to open the door voluntarily. *Cleveland*, 118 Wis. 2d at 622, 348 N.W.2d at 517.

The purposes behind the announcement rule are:

> (1) protecting the individual's privacy in the home; (2) decreasing the potential for violence by alerting the resident that the officer is legitimately on the premises; and (3) preventing the physical destruction of property by giving the resident the opportunity to admit the officer voluntarily.

*Id.*

The state contends that the police complied with the announcement rule when they waited two to six seconds after the announcement before they broke Stevens' door down. The state relies on language in *State v. Long*, 163 Wis. 2d 261, 266, 471 N.W.2d 248, 251 (Ct. App. 1991), that "[c]ourts have refused to set a strict time limit for the announcement rule. There cannot be a hard and fast time limit given the myriad of potential circumstances that could confront an officer serving a warrant." The state also cites several cases from other jurisdictions in support of its proposition that the officers complied with the announcement rule.

In *Long*, the police officers approached the door, knocked and shouted, "Police; search warrant." After

waiting seven to ten seconds and receiving no response, they battered down the outer door. When they reached the inner door, they again knocked and shouted, "Police; search warrant." After another five to seven seconds, the police battered down the inner door. *Id.* at 264, 471 N.W.2d at 250. We concluded that the officers complied with the announcement rule. *Id.* at 267-68, 471 N.W.2d at 251.

None of the cases the state cites supports its contention that waiting two to six seconds after the announcement before forcibly entering is sufficient to comply with the announcement rule. In *United States v. Streeter*, 907 F.2d 781, 788-89 (8th Cir. 1990), the officers shouted "Police, search warrant, open the door" repeatedly and then waited five to ten seconds after hearing activity inside the house that would indicate that their safety would be threatened if they waited longer before they forcibly entered. In *United States v. One Parcel of Real Property*, 873 F.2d 7, 9 (1st Cir. 1983), officers at another door yelled "police" and five to ten seconds later a second officer yelled "police" and waited another five to ten seconds before forcibly entering. Finally, in *United States v. Phelps*, 490 F.2d 644, 646 (9th Cir. 1974), the officers knocked and announced their presence, waited five to ten seconds, knocked and announced their presence again and waited an additional five to ten seconds before entering. The state cites other cases approving entry after a time lapse of ten seconds or more between the announcement and entry.

Here, the police waited no more than five or six seconds and perhaps as little as two seconds before battering Stevens' door down. In fact, the officers' testimony demonstrates their intent to make a dynamic entry *immediately* after they determined the ruse had

297

failed, and not to wait for the occupants to respond to their announcement. In effect, the police did not intend to wait for the occupants to respond to their announcement before forcibly entering, which is directly contrary to the knock and announce requirement. While we recognize that there is no hard and fast time limit, the announcement rule requires that the occupants be given time to voluntarily allow the police to enter. We find nothing that authorizes such a short passage of time between the announcement and forcible entry, and we agree with the trial court that, in the absence of exigent circumstances, two to five seconds is insufficient time to allow the occupant to voluntarily open the door after being alerted that the police are legitimately on the premises.

The state next contends that, notwithstanding the officers' failure to comply with the announcement rule, the search and seizure are reasonable because exigent circumstances existed that justified the noncompliance. We do not agree.

It is generally recognized that the announcement rule may be excused only if exigent circumstances justify the no-knock entry, such as a reasonable belief that the unannounced entry is required to ensure the safety of the police or others or to prevent the destruction of evidence. *Williams,* 168 Wis. 2d at 982, 485 N.W.2d at 46. The propriety of a deviation from the announcement rule depends upon the circumstances of the case. *Cleveland,* 118 Wis. 2d at 625, 348 N.W.2d at 518.

We concluded in *Long* that, where the warrant involves a search for drugs, a shorter wait between announcement and entry is justified if the officers have reasonable cause to believe the drugs may be destroyed. *Id.* at 268, 471 N.W.2d at 252. We noted that the officers

298

have reasonable cause to believe the drugs may be destroyed when the police know the suspect and the drugs are present inside the residence, the suspect refuses to open the door after the announcement and the police hear movement inside the house indicative of the destruction of evidence after their announcement.

Here, nothing in the record indicates that the police had any reason to believe the drugs were about to be destroyed. None of the officers testified to hearing any movement within the house after their announcement.

Further, we reject the state's argument that Boncher's testimony suggesting that most of the drug warrants he executed involved weapons is a sufficient showing of exigent circumstances justifying a no-knock entry in absence of a no-knock authorization in the warrant. The police could have presented this evidence to the magistrate at the time they applied for the warrant and requested the magistrate to include in the warrant the specific authority to execute a no-knock entry. *Cleveland*, 188 Wis. 2d at 626-27, 348 N.W.2d at 518-19.

Even if the police have no reason to seek advance authorization for a no-knock entry, or otherwise have not done so, they may still make a no-knock entry if the facts existing at the time of execution give them reasonable cause to believe a no-knock entry is required to safely and successfully execute the warrant. *Long*, 163 Wis. 2d at 268, 471 N.W.2d at 252. However, the exigent circumstances justifying an unannounced entry must be supported by a particularized belief that there are weapons in the apartment to be searched. The police must have a sufficiently particular reason to enter in the manner chosen. *Cleveland*, 118 Wis. 2d at 629, 348 N.W.2d at 520 (citation omitted). The general belief that most drug dealers possess weapons in their homes does not justify a

no-knock entry in the absence of authorization in the warrant.

Our supreme court rejected a blanket approach in narcotics cases that the mere fact that narcotics are by their nature easily capable of destruction is sufficient to justify a no-knock entry in all cases, based on the possibility that evidence may be destroyed. *Cleveland*, 118 Wis. 2d at 628-29, 348 N.W.2d at 519. Similarly, our supreme court rejected the state's argument that because drug dealers are often armed, the officers reasonably believed that their safety would be endangered if they announced their presence. *Id.* at 631 n.16, 348 N.W.2d at 521 n.16. "The fact that a person is a member of a class of persons more likely to resist search is not sufficient to justify unannounced entry. The officer must have knowledge of specific facts that indicate that this particular person will [be armed and resist the search]." *Id.* Thus, we reject a blanket approach in narcotics cases that the mere fact that narcotics dealers often possess weapons justifies a no-knock entry in all cases, based on the need to protect the officers and others.

The state fails to demonstrate that the police received any further information at the time they executed the search warrant that there were weapons in Stevens' apartment. We conclude the state has failed to demonstrate any exigent circumstances that would justify its noncompliance with the announcement rule.

Next, the state argues that suppression of the evidence is an improper remedy because the announcement rule is not constitutionally mandated. Again, we do not agree. "The [announcement] rule generally is viewed as one of federal constitutional dimensions, grounded in the fourth amendment." *Long*, 163 Wis. 2d at 266, 471

N.W.2d at 250 (citing *Cleveland,* 118 Wis. 2d at 623, 348 N.W.2d at 517 and *United States v. Ruminer,* 786 F.2d 381, 383 (10th Cir. 1986)).

The fourth amendment prohibits all unreasonable searches. *Ker v. California,* 374 U.S. 23, 33 (1963). Further, the lawfulness of searches and seizures is determined under state law insofar as it does not violate the federal constitution. *Id.* at 37. The police officers' failure to comply with the announcement rule's requirements, in the absence of exigent circumstances justifying noncompliance, is unreasonable as a matter of law under the holdings of the Wisconsin Supreme Court in the cases cited above. While students and commentators may debate as to whether the source of the announcement rule is constitutional, the existence of the requirement as a predicate to concluding that a search is reasonable remains unchallenged in the ten years since our supreme court has pronounced this rule.

The suppression of evidence is required upon a showing that it was obtained in violation of a constitutional right. *State v. Verkuylen,* 120 Wis. 2d 59, 61, 352 N.W.2d 668, 669 (Ct. App. 1984). Therefore, evidence obtained in violation of a suspect's fourth amendment right to be free from unreasonable searches and seizures must be suppressed. Because we have concluded that a search and seizure in violation of the announcement rule in absence of exigent circumstances is unreasonable as a matter of law in Wisconsin, evidence obtained during such a search and seizure is properly suppressed.

Finally, the state argues that Stevens' responses to Baudhuin's questions concerning his identity and residence should not be suppressed because *Miranda* does not apply to "routine booking questions." We need not

301

determine whether Wisconsin courts have adopted a "routine booking" exception to *Miranda* because we conclude that Baudhuin's questions violated *Miranda.*

In *Arizona v. Mauro,* 481 U.S. 520, 526 (1987), the Supreme Court held that the *Miranda* safeguards extended "not only to express questioning, but also its functional equivalent." The Supreme Court defined "functional equivalent" as "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect [based upon] the perceptions of the suspect . . .." *Rhode Island v. Innis,* 446 U.S. 291, 301 (1980).

We conclude that Baudhuin's questions concerning Stevens' identity and residence were designed to obtain incriminating evidence concerning Stevens' participation in the crime under investigation. As in *United States v. Disla,* 805 F.2d 1340, 1347 (9th Cir. 1986), questions concerning Stevens' name and residence constituted interrogation because the questions related to an element of the crime under investigation. *See also United States v. Dominguez,* 835 F.2d 694, 697 (7th Cir. 1987). Through his questions, Baudhuin obtained evidence of Stevens' possessory interest in the apartment and, hence, his acknowledgement of his proprietary interest in the cocaine and cocaine-dealing paraphernalia. The responses evidenced the identity of the person who possessed the cocaine in the apartment with intent to deliver it. Because the police failed to advise Stevens of his *Miranda* rights before questioning him, his responses were obtained in violation of his constitutional rights and must be suppressed. *Verkuylen,* 120 Wis. 2d at 61, 352 N.W.2d at 669.

*By the Court.*—Order affirmed.