STATE of Wisconsin, Plaintiff-Respondent,†

v.

Bruce M. STEVENS, Defendant-Appellant.

Court of Appeals

*No. 97–0758–CR. Submitted on briefs August 26, 1997.—Decided September 16, 1997.*

(Also reported in 570 N.W.2d 593.)

†Petition to review granted.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Henry R. Schultz*, of Green Bay.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Stephen W. Kleinmaier*, assistant attorney general.

Before Cane, P.J., Myse and Hoover, JJ.

MYSE, J. Bruce M. Stevens appeals a judgment of conviction, arguing that the trial court erroneously denied his motion to suppress evidence obtained after a "no-knock" entry of his home. Stevens contends that the police did not have a reasonable suspicion that knocking and announcing their presence would have inhibited the efficient investigation of the crime or endangered the police officers' safety. Stevens contends that the entry therefore violated his Fourth Amendment right to be free from unreasonable searches and seizures, and that the evidence obtained after the unlawful entry should be suppressed. Because we conclude that the entry violated Stevens's Fourth Amendment rights, and further conclude that suppression of the seized evidence is the proper remedy, we reverse the judgment of conviction and remand for further proceedings.

## Procedural History

This case has a long history of appellate review. Initially, the trial court granted a motion to suppress the results of a search of Stevens's house because the officers executing the warrant failed to allow a sufficient time for the occupants of the home to respond to their demand for entry. On appeal by the State, this court affirmed the order after concluding that the police violated the knock and announce requirement of the Fourth Amendment to the United States Constitu-

tion, and that the evidence seized as a result of the unlawful entry should therefore be suppressed. *State v. Stevens*, 173 Wis. 2d 290, 496 N.W.2d 201 (Ct. App. 1992). The Wisconsin Supreme Court reversed, concluding that the rule of announcement was not a constitutional requirement, and that Wisconsin courts were therefore free to hold that a blanket exception permitting the police to enter without announcing their presence could be created in all felony drug-related warrants. *State v. Stevens*, 181 Wis. 2d 410, 420–24, 511 N.W.2d 591, 593–95 (1994). The supreme court then created such a blanket exception in all felony drug cases, and remanded to the trial court. *Id.*

On remand, the trial court denied Stevens's motion to affirm the earlier suppression order. The trial court relied on *State v. Richards*, 201 Wis. 2d 839, 549 N.W.2d 218 (1996), in which the Wisconsin Supreme Court affirmed its *Stevens* holding. After Stevens filed notice of appeal in this case, the United States Supreme Court struck down *Richards*, holding that the Fourth Amendment does not permit a blanket exception to the knock and announce requirement for felony drug investigations. *Richards v. Wisconsin*, 117 S.Ct. 1416 (1997).

## Facts

The facts in this case were set forth in our original decision and summarized by our supreme court as follows:

> Several members of the Green Bay Police Department executed a search warrant at [Stevens's] home. The police did not request no-knock authorization in the warrant; therefore, the warrant did not authorize a no-knock entry. As planned, one of

the officers, dressed as a pizza delivery man, drove into the driveway of the home and knocked on the door. No one answered. After knocking a second time, he said, "Dominos Pizza. Got a pizza delivery." Someone inside responded, "We didn't order any pizza," or something to that effect, and later added, "Get real."

The officer again announced the pizza delivery but heard no response. When the police officers realized they were not going to gain entry as a result of this ruse, they proceeded to execute a dynamic entry.[1] They first yelled, "Police, search warrant," then paused, forced the door open and entered. One officer estimated that it was four to five seconds from the time the police announced their identity and purpose until they rammed the door open. The police officers secured the house in seven to ten seconds. The person inside the house who was closest to the door claimed she did not hear anyone yell, "Police, search warrant," or anything to that effect.

A lieutenant of the police department arrived shortly after the entry to find [Stevens] handcuffed and sitting on the floor. The lieutenant asked [Stevens] if he lived there and [Stevens] stated that he did. When the lieutenant next asked [Stevens] his name, [Stevens] at first responded, "Zeke," and then changed his answer to, "Bruce Stevens."

The lieutenant searched the house and discovered white powder that looked like cocaine along with drug paraphernalia in the bedroom. Upon returning to the dining area, the lieutenant told [Stevens] he was under arrest and asked [Stevens]

---

[1] Prior to the dynamic entry, the police also attempted to open the door but found it locked. *State v. Stevens*, 173 Wis. 2d 290, 294, 496 N.W.2d 201, 203 (Ct. App. 1992), *rev'd in part*, 181 Wis. 2d 410, 511 N.W.2d 591 (1994) (footnote added).

if he had any controlled substances on him. [Stevens] said that he did in his left front pants pocket. The lieutenant reached in the pocket and pulled out four bindles.

The lieutenant also found shells in [Stevens's] pocket. When the lieutenant asked if he had a gun to go with the shells, [Stevens] said it was some place in the house. Then, the lieutenant advised [Stevens] of his *Miranda* rights for the first time. [Stevens] responded that he wanted an attorney.

After [Stevens] received his *Miranda* warnings, another police officer found .32 caliber bullets on [Stevens]. The police also seized a 20 gauge shotgun from the bedroom and a .32 caliber handgun along with five shells found elsewhere in the house.

At the suppression hearing, the trial court found that the police knocked the door down two to six seconds after announcing, "Police, search warrant." The court granted [Stevens's] motion to exclude the evidence, stating that the pause between announcement and entry, two to six seconds, was very brief. Because a purpose of the rule of announcement is to give the owner a chance to respond and allow the officers to enter, the police had violated the rule. The court found that suppression of the evidence was the proper remedy for this violation of the rule of announcement.

*Stevens*, 181 Wis. 2d at 418–20, 511 N.W.2d at 592–93 (1994).

## Standard of Review

Allegations involving the freedom from unreasonable searches and seizures raise a question of constitutional fact that we review without deference to

the trial court. *State v. Jackson*, 147 Wis. 2d 824, 829, 434 N.W.2d 386, 388 (1989). Whether suppression is the appropriate remedy for violations of the Fourth Amendment likewise raises a question of law that we determine independently from the trial court's determination.

## The Constitutionality of the "No-Knock" Entry

Stevens first argues that the United States Supreme Court decision in *Richards* requires us to hold that the police entry into his home is an illegal entry in violation of the Fourth Amendment. The State responds that *Richards* permits an entry without announcement when a reasonable suspicion exists that an announced entry would endanger the officers' safety, or inhibit the effectiveness of the investigation by allowing a suspect to destroy the evidence being sought by the search warrant.

The State argues that it can and does meet the *Richards* reasonable suspicion standard by relying on the generalized experience of law enforcement in similar cases. The State suggests that law enforcement officers with years of experience in the field of drug enforcement have learned that drug dealers are frequently armed. Based on this, the State argues, law enforcement officers could well conclude in any given drug-related case that announcing their presence before raiding a home would endanger their safety. The State similarly suggests that this generalized experience discloses that defendants in drug cases will take immediate steps to destroy or dispose of the evidence that is sought by the search warrant upon learning of the presence of law enforcement officers.

Under the particular facts of this case, the State concedes to having no specific information that either

Stevens was armed or likely to offer armed resistance to the officers, or that he had the ability to destroy the drugs in his possession if the officers announced their entry. The State's position is that the officers' generalized information regarding drug transactions was sufficient to create the type of reasonable suspicion required under the Fourth Amendment, despite their lack of specific knowledge that Stevens was unarmed or unlikely to destroy evidence.

We reject the State's contentions for a variety of reasons. First, we note that the United States Supreme Court in *Richards* specifically provided that a "no-knock" entry can only be justified based on a reasonable suspicion, "under the *particular* circumstances," that knocking and announcing would be dangerous, futile, or would inhibit the effective investigation of crime. *Id.* at 1421 (emphasis added). This language is inconsistent with the State's contention that some form of *generalized* police knowledge is sufficient to create a reasonable suspicion.

Second, we agree with the United States Supreme Court that any burden placed on the police as a result of the particularized showing requirement is only a modest one. *Id.* at 1422. If the police have a reasonable suspicion based on specific and articulable facts (i.e., something beyond a mere hunch) that announcing their presence will endanger their safety or present an opportunity for a suspect to destroy evidence, the police may effect an entry without announcement. *Id.*

Irrespective of the low threshold of the evidence required to lawfully effect a "no-knock" entry, however, the burden still must be met from the specific facts of each case. If the police do not have a reasonable suspicion that announcing their presence may impede the

331

investigation or endanger the officers, they may not enter a home without announcing their presence.

The State's proposition that mere generalized knowledge is sufficient to make an unannounced entry into a suspect's home does nothing more than cloak the blanket rule created by our state supreme court in a different guise. If such generalized knowledge was sufficient, the police would be free in each and every case to effect an unannounced entry into a home where drugs are suspected. The United States Supreme Court, however, specifically and unambiguously rejected such a narrow interpretation of our Fourth Amendment right to be free from unreasonable searches and seizures. Had the United States Supreme Court meant that generalized experience alone was sufficient to constitute reasonable suspicion, it would have affirmed our supreme court based merely on the easily disposable nature of the drugs involved in *Richards*. But this it did not do; although the Supreme Court affirmed the "no-knock" entry in that case, it did so only because the easily disposable nature of the drugs was *combined with* other circumstances peculiar to that case. *Id.* at 1422. We therefore conclude that *Richards* represents a categorical rejection of the view that generalized knowledge alone is sufficient to create the necessary reasonable suspicion required to justify an unannounced entry.

## Suppression as a Remedy

The State contends that in the event we conclude that the entry was unlawful, the evidence seized should not be suppressed. In support of its position, the State notes that the manner of gaining entry did not in any way cause the evidence to be seized: law enforcement officers armed with a valid search warrant have

an ultimate right to enter the premises, and therefore inevitably would have discovered and seized the evidence. Relying on *New York v. Harris*,[2] the State argues that the evidence seized was not the result of the exploitation of the defendant's Fourth Amendment rights and that, accordingly, suppression is not the appropriate remedy. The State argues *Segura v. United States*[3] is but one example where an unlawful entry did not require suppression after evidence was seized in the execution of a validly obtained search warrant.

We conclude that suppression of the evidence obtained in violation of the Fourth Amendment is the appropriate remedy for the officers' unlawful entry into an individual's home. Although controversial, the exclusion of evidence illegally and improperly obtained is a long-standing rule. Since the United States Supreme Court decided *Mapp v. Ohio*[4] in 1961, the suppression of illegally obtained evidence has been established as the only effective remedy to deter unlawful police conduct. While exceptions to the suppression rule have been created, the general rule that evidence obtained in violation of a constitutional right must be suppressed has long been the clear mandate of our supreme court. *See State v. Hochman*, 2 Wis. 419, 419, 86 N.W.2d 446, 451 (1957).

We do not agree with the State that either *Harris* or *Segura* are persuasive authority to the contrary. In each case the illegality was sufficiently removed from the lawfully obtained evidence so that the suppression remedy was not required. *Harris* involved an arrest

[2] *New York v. Harris*, 495 U.S. 14 (1990).

[3] *Segura v. United States*, 468 U.S. 796 (1984).

[4] *Mapp v. Ohio*, 367 U.S. 643 (1961).

within the home based on probable cause but without a warrant. This violated the "*Payton*" rule, which prohibits the warrantless and nonconsensual entry into a home to effect a routine felony arrest.[5] The police procured an oral confession within the home and a written one later at the station house. The United States Supreme Court held that the station house confession should not have been suppressed. *Harris*, 495 U.S. at 21. It concluded that the purpose of the *Payton* rule was to protect the home, and that this purpose was vindicated by excluding "anything incriminating gathered from arresting Harris in his home." *Id.* at 20. Although the Supreme Court was not confronted with the issue of the suppression of Harris's confession within the home, it noted that suppression was the correct outcome. *Id.* Since Stevens, unlike Harris, argues for the suppression of evidence gathered from within the home, we believe the State's reliance on *Harris* is misplaced.

*Segura* also presents a case very different from ours. In that case, Task Force agents obtained an arrest warrant, and validly executed it by arresting Segura outside his apartment. *Segura*, 468 U.S. at 800. After the arrest, the agents took Segura inside his home to wait for others obtaining a search warrant. *Id.* On appeal, it was presumed that this entry into Segura's home was improper. *Id.* at 804. A search warrant was then obtained by the other agents, based wholly on information obtained before any agents had entered the apartment. *Id.* at 801. The search warrant was then properly executed, and the agents seized evidence they had spotted in plain view on their initial entry. *Id.* The Supreme Court held that suppression

---

[5] *Payton v. New York*, 445 U.S. 573 (1980).

was improper because the evidence was not directly obtained from the unconstitutional search or seizure; rather, it was obtained after the issuance of a valid and properly executed search warrant. *Id.* at 813–14. Since Stevens, unlike Segura, argues for the suppression of evidence obtained directly from an improperly executed search warrant, however, we believe reliance on this case is also misplaced.

■

In attempting to convince us that *Harris* and *Segura* are controlling, the State has lost sight of the reasoning behind the suppression remedy. "The purpose of the Fourth Amendment exclusionary rule is to deter unreasonable searches, no matter how probative their fruits." *Oregon v. Elstad*, 470 U.S. 298, 306 (1985). While the State is correct that the manner of the entry did not cause the evidence to be seized, the only effective deterrent to unconstitutional "no-knock" entries is to suppress the evidence. If we were to recognize the right without providing an effective remedy, we would once again give the police a blanket rule to effect unannounced entries. We are unwilling to permit this basic right "to be revocable at the whim of any police officer who, in the name of law enforcement itself, chooses to suspend its enjoyment." *Mapp*, 367 U.S. at 660.

The State attempts to respond to this concern by arguing that civil remedies are sufficient to discourage unannounced entries. This argument, however, is not persuasive because it completely flies in the face of the United States Supreme Court's decision in *Mapp*. In holding that the exclusionary rule was applicable to the states, the Supreme Court was influenced by the experience of states showing the "obvious futility of relegating the Fourth Amendment to the protection of

335

other remedies." *Id.* at 652. The Court was not willing then, and we are not willing now, to turn the assurance against unreasonable searches and seizures into " 'a form of words', valueless and undeserving of mention." *Id.* at 655. We apply the exclusionary rule because we seek "to deter—to compel respect for the constitutional guaranty in the only effectively available way." *Id.* at 656 (*quoting Elkins v. United States*, 364 U.S. 206, 217 (1960)).

Any alternative short of suppression would not sufficiently deter law enforcement from executing unannounced entries. We again emphasize that if the police have a reasonable suspicion that an unannounced entry will be required, they may obtain a warrant authorizing an unannounced entry. Furthermore, the police may, in light of exigent circumstances unknown at the time the warrant was obtained, execute an unannounced entry based upon the particular circumstances of each specific case. All that is required to avoid the suppression of what is admittedly probative evidence is for police to conform the manner in which the warrant is executed to the requirements of the Fourth Amendment. The people have the right to demand no less from law enforcement, and law enforcement is obligated to give no less to the people.

The rights we seek to vindicate are not trivial ones. *See Richards*, 117 S.Ct. at 1421 n.5 ("the individual interests implicated by an unannounced, forcible entry should not be unduly minimized"). Respect for the sanctity of the home was so highly regarded by our founding fathers that it was enshrined in the Bill of Rights: "The right of the people to be secure in their . . . houses . . . against unreasonable searches and seizures, shall not be violated." United States Const. amend. IV.

Likewise, Wisconsin has affirmed the "right of the people to be secure in their . . . houses . . . against unreasonable searches" for as long as it has been a state. WISCONSIN CONST. art. I, § 11. We again emphasize that the "no-knock" entry is a particularly violent intrusion into the home. Although we are sympathetic to the plight of police involved in drug raids, we are unwilling to permit unconstitutional intrusions to go without an effective sanction.

## Conclusion

We conclude that the entry into Stevens's home violated the Fourth Amendment. Since the entry into Stevens's home was unlawful, the evidence seized during the entry must accordingly be suppressed. We therefore reverse the judgment, and remand the matter to the trial court for disposition consistent with the requirements of this opinion.

*By the Court.*—Judgment reversed and cause remanded.