ANNETTE KINGSLAND ZIEGLER, J.
¶ 37. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." A violation occurs "when government officers violate a person's 'reasonable expectation of privacy.'" United States v. Jones, 565 U.S. __, 132 S. Ct. 945, 950 (2012) (quoting Katz v. United States, 389 U.S. 347, 360 (1967) (Harlan, J., concurring). The purpose of the Fourth Amendment is to curb abusive police practices by protecting against unreasonable searches and seizures. See Payton v. New York, 445 U.S. 573, 608 (1980) (White, J., dissenting). The police en *754 gaged in no such abusive practice in the case at issue. Under these facts and circumstances, law enforcement's entry into this house, with Podella's consent, and the search of this portable laptop computer survives constitutional scrutiny.
¶ 38. Homeowners would be justifiably disturbed if we were to conclude that an overnight guest possesses the authority to give carte blanche consent to a police search of their home. The majority opinion does not provide any such authority to an overnight guest, such as Podella. There is no dispute that Podella possessed the authority to allow law enforcement to view the contents of this laptop computer. Here, evidence of child pornography was found on this portable laptop, which just happened to be viewed in the home. Podella requested that law enforcement view the laptop in the living room. The laptop could have been viewed anywhere. There is nothing about the laptop being in this home versus somewhere else that elevates the police entry under these circumstances to somehow being an unreasonable search and seizure. There is nothing in this record that indicates law enforcement was particularly interested in gaining entry of the home. Instead this record reflects that law enforcement was interested in viewing the laptop, wherever it may be viewed, and that Podella was interested in ensuring that they see the contents of the computer. Should the fact that law enforcement viewed the laptop in the living area of the home dictate that the evidence be suppressed, when it is undisputed that if the laptop were viewed at the police station, a coffee shop, or some similar location, no challenge would have been made to the search?[1]
*755 ¶ 39. A third party may consent to a search when that party "possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." United States v. Matlock, 415 U.S. 164, 171 (1974) (emphasis added). In this case, the effect the police sought to inspect and did inspect was Sobczak's laptop computer. Sobczak admits that he gave Podella permission to use the computer. The majority opinion correctly concludes that Podella had consent to authorize Officer Dorn to search the files on the computer that she believed depicted child pornography. See majority op., ¶ 32 (noting that Podella has explicit consent from Sobczak to use the computer, that she was using it in a common area of the house, that Officer Dorn opened only the files suspected to be child pornography, and that the files were not password protected).
¶ 40. In this case, law enforcement entered the home with the consent (and at the request) of Podella. There is no evidence that law enforcement was trying to gain entry into the home for any reason other than to view the laptop's contents. There is no indication that law enforcement otherwise wished to search the home or engage in conduct that in any way required them to gain entry to the home.[2] Law enforcement entered the *756 main living area of the home with consent to view a portable laptop. Podella, not the homeowner, consented to Officer Dorn entering into the common living area, which was approximately 20 feet from the front door, in order to view the suspicious videos on Sobczak's computer. After doing so, Officer Dorn took the laptop to the police station. See majority op., ¶¶ 4-5. While law enforcement did view the computer in the home, law enforcement did not otherwise search the home. In fact, the police later obtained a search warrant to justify a search of Sobczak's home.
¶ 41. As a practical matter, the object of the search — Sobczak's laptop computer — was a portable object that Podella could have brought to Officer Dorn for him to view. In the case at hand, we are confronted with scrutinizing law enforcement's conduct in a constitutional sense when Podella consented to the search of this portable object in the common area of this home. We face this challenge because law enforcement viewed the laptop in the home instead of elsewhere. See majority op., ¶ 28 ("There can be no doubt that 'the Fourth Amendment has drawn a firm line at the entrance to the house,' and it is our duty to zealously guard that line.") (quoting Payton, 445 U.S. at 590). We are not confronted with a situation where the police used the pretext of searching a laptop to gain entry into a home. A person has a highly-protected expectation of privacy when it comes to law enforcement entering his or her home. There is no evidence in the record that suggests *757 the police conducted a broader search than was necessary to determine whether the files Podella found on Sobczak's computer were child pornography.
¶ 42. In short, I join the majority's opinion, and I agree with its conclusions that the police actions in this case were constitutional. Here, a constitutional challenge would not have been brought had the laptop been viewed in a myriad of other places. Under these facts and circumstances, Podella possessed sufficient authority to allow the police to enter the home in order to conduct a search of the laptop.
¶ 43. For the reasons set forth, I respectfully concur.
¶ 44. (dissenting). "When it comes to the Fourth Amendment, the home is first among equals."[1] The rule is that a law enforcement officer who enters a residence without a warrant is engaging in an unconstitutional act. Courts have, however, "jealously and carefully drawn"[2] exceptions to the rule, one of which posits that an individual possessing appropriate authority may voluntarily "consent" to the entry and search of a residence.[3] Exceptions to the warrant requirement, such as voluntary consent, *758 are construed narrowly because warrants are generally preferable to police action without a warrant.[4]

 If instead of finding child pornography, Podella was sexually assaulted by the defendant that morning and wished that law enforcement enter the home to take her statement, would *755 her statement be suppressed under the logic that law enforcement had no authority to enter the home?

 In contrast to the facts and circumstances of this case, a court will suppress evidence when law enforcement violates a homeowner's right to privacy by unreasonably searching a home and recovering evidence that is somehow tied to the home. See e.g., State v. Stevens, 213 Wis. 2d 324, 326, 328-29, 570 N.W.2d 593 (Ct. App. 1997), aff'd, 217 Wis. 2d 518, 580 N.W.2d 688 (1998) (suppressing cocaine and a gun recovered from the defendant's bedroom where police attempted a ruse of a pizza delivery to gain entry into the defendant's home and when that failed, entered the defendant's home without knock *756 ing and announcing); State v. Sanders, 2008 WI 85, ¶¶ 13-15, 26, 311 Wis. 2d 257, 752 N.W.2d 713 (suppressing cocaine found in a canister underneath defendant's bed after police entered defendant's home without a warrant, arrested the defendant, and conducted two searches of the defendant's bedroom after the arrest).

 Florida v. Jardines, __ U.S. __, 133 S. Ct. 1409, 1414 (2013).

 Jones v. United States, 357 U.S. 493, 499 (1958).

 Georgia v. Randolph, 547 U.S. 103, 106, 109 (2006) (citing United States v. Jones, 357 U.S. 493, 499 (1958)); Illinois v. Rodriguez, 497 U.S. 177, 181 (1990)).
" '[0]ur law holds the property of every man so sacred, that no man can set foot upon his neighbour's close without his leave.' 2 Wils. K.B., at 291, 95 Eng. Rep., at 817....' [T]he only question is whether he had given his leave (even implicitly) for them to do so." Jardines, 133 S. Ct. at 1415.

 Randolph, 547 U.S. at 117.