STATE of Wisconsin, Plaintiff-Appellant,†

v.

Rayshun D. EASON, Defendant-Respondent.

Court of Appeals

No. 98–2595–CR. *Submitted on briefs February 11,
2000.—Decided March 23, 2000.*

## 2000 WI App 73

(Also reported in 610 N.W.2d 208.)

†Petition to review granted.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney general, with *Stephen W. Kleinmaier*, assistant attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Jeffrey E. Livingston* of *Livingston & Vaccaro,* of South Beloit, Illinois.

Before Eich, Vergeront and Deininger, JJ.

¶ 1.   EICH, J.   The State of Wisconsin appeals from an order suppressing evidence seized by police while executing a no-knock search warrant at an apartment occupied by the defendant, Rayshun Eason, and various other people. The trial court suppressed the evidence on grounds that the search warrant affidavit failed to justify a no-knock search. The State argues on appeal that the affidavit was sufficient and, even if it were not, we should still reverse the suppression order because: (1) there was no causal relationship between the officers' no-knock entry into the apartment and discovery of the seized evidence; or, alternatively, (2) the evidence should be admissible in any event under the "good-faith exception" to the exclusionary rule articulated by the United States Supreme Court in *United States v. Leon*, 468 U.S. 897 (1984). We affirm.

¶ 2.   The warrant in question authorized the police to enter the apartment without knocking or otherwise announcing their appearance, and to search the premises for cocaine and other controlled substances and associated paraphernalia. Present in the apartment, among others, were Eason, his aunt, Shannon Eason, and an acquaintance, Clinton Bentley. After

398

breaking into the apartment unannounced, police found a cache of drugs and Eason was eventually charged with possession of cocaine and with intent to deliver. He moved to suppress evidence of the drugs, arguing to the circuit court that they were seized in violation of his Fourth Amendment rights. Specifically, he claimed that the warrant's no-knock authorization was unjustified because the affidavit for the warrant failed to establish a reasonable suspicion that knocking and announcing their presence before entering would have placed the officers in danger. The State argued that the affidavit was adequate and, in the alternative, the evidence should be ruled admissible under the *Leon* good-faith exception to the exclusionary rule. The court disagreed and suppressed the evidence.

■■■■

¶ 3.   On review of the grant or denial of a motion to suppress evidence, we will uphold the circuit court's findings of fact unless they are clearly erroneous. *See State v. Eckert*, 203 Wis. 2d 497, 518, 553 N.W.2d 539 (Ct. App. 1996). However, the application of constitutional principles to the found facts is a question of law which we decide independently, without deference to the circuit court's decision. *See State v. Patricia A.P.*, 195 Wis. 2d 855, 862, 537 N.W.2d 47 (Ct. App. 1995).

¶ 4.   In *Richards v. Wisconsin*, 117 S. Ct. 1416, 1421–22 (1977), the Supreme Court held that, in order for police executing a search warrant to make an unannounced, or "no-knock," entry to the premises,

> [they] must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime . . . .

¶ 5.   The State points to the following portion of the affidavit in support of its argument that it meets the "reasonable suspicion" requirement:

> Your affiant has checked the criminal histories of both Clinton Bentley and Shannon Eason and in so doing has learned that BENTLEY was arrested by the Belvidere Illinois Police Department in 1989 for AGGRAVATED ASSAULT. Your affiant also learned that EASON has been arrested for such things as larceny (nine times), Obstructing (three times), and ASSAULT (twice).

¶ 6.   "The[se] arrests," says the State, "demonstrate the willingness of two apartment occupants to use violence," thus placing the officers' safety at risk should their presence be made known to the occupants ahead of time. It also points to the affiant's statement elsewhere in the affidavit that, based on his experience and training as a police officer, he was aware that persons involved in "drug related crimes often arm themselves with weapons, including firearms and sometimes use those weapons against the police."[1]

¶ 7.   The circuit court agreed with the State that the threshold of proof in such situations is low—and noted that courts owe great deference to the determination of reasonable suspicion by the magistrate issuing the warrant, *see State v. Kerr*, 181 Wis. 2d 372, 379, 511 N.W.2d 586 (1994)—but concluded that the affidavit in this case did not reach that "limited threshold."

---

[1] In *State v. Meyer*, 216 Wis. 2d 729, 755, 576 N.W.2d 260 (1998), the Wisconsin Supreme Court, applying the rule articulated in *Richards v. Wisconsin*, 117 S. Ct. 1416 (1977), noted that, "in determining whether reasonable suspicion exists, an officer's training and prior experience in similar situations may be considered in combination with the particular facts."

¶ 8. Our independent review of the affidavit in light of the above-stated principles, leads us to agree with the circuit court. We don't believe Bentley's nine-year-old arrest for an offense which may or may not have involved violent conduct or possession of weapons—and which may or may not have resulted in a conviction—establishes a reasonable likelihood that the officers' safety might have been endangered had they knocked and announced prior to entering the apartment. Like Eason, we think it is equally reasonable to assume that the reason no conviction was uncovered by the officer drafting the affidavit was that Bentley may have been released as the "wrong man." The same is true with respect to the affidavit's allegations regarding Shannon Eason—that she had been arrested in the past for larceny, obstructing an officer and assault. There is no information as to when and where those arrests took place, or whether they involved any violent acts—and, again, whether a conviction followed. The affidavit doesn't assert that either Bentley or Shannon Eason—or any of the other occupants of the apartment—were armed; it merely offers a general statement that drug-related crimes often involve weapons. The affidavit simply doesn't assert facts giving rise to a reasonable suspicion that the officers' announced entry into the apartment would have placed them in danger.

¶ 9. As indicated, the State also maintains that neither the circuit court nor this court can suppress the evidence without first determining that there was a "causal relationship" between the failure to knock and the discovery of the evidence. We flatly rejected that argument in *State v. Stevens*, 213 Wis. 2d 324, 570 N.W.2d 593 (Ct. App. 1997), on the basis that its

acceptance would nullify what we considered to be an important deterrent against unconstitutional conduct by police. We said:

> While the State is correct that the manner of the entry did not cause the evidence to be seized, the only effective deterrent to unconstitutional "no-knock" entries is to suppress the evidence. If we were to recognize the right without providing an effective remedy, we would once again give the police a blanket rule to effect unannounced entries. We are unwilling to permit this basic right to be revocable at the whim of any police officer who, in the name of law enforcement itself, chooses to suspend its enjoyment (internal quotations omitted).
>
> . . . .
>
> Any alternative short of suppression would not sufficiently deter law enforcement from executing unannounced entries.
>
> The rights we seek to vindicate are not trivial ones. *See Richards*, 117 S. Ct. at 1421 n.5 ("the individual interests implicated by an unannounced, forcible entry should not be unduly minimized"). Respect for the sanctity of the home was so highly regarded by our founding fathers that it was enshrined in the Bill of Rights: "The right of the people to be secure in their . . . houses . . . against unreasonable searches and seizures, shall not be violated." UNITED STATES CONST. amend. IV. Likewise, Wisconsin has affirmed the "right of the people to be secure in their . . . houses . . . against unreasonable searches" for as long as it has been a state. WISCONSIN CONST. art. I, § 11. We again emphasize that the "no-knock" entry is a particularly violent intrusion into the home. Although we are sympathetic to the plight of the police involved in drug raids, we are unwilling to permit unconsti-

tutional intrusions to go without an effective sanction.

*Id.* at 335–37.

¶ 10. The State directs our attention to the United States Supreme Court's opinion in a more recent case, *United States v. Ramirez*, 118 S. Ct. 992 (1998), which, according to the State, adopts the causal-relationship requirement and thus trumps *Stevens* and requires reversal of the order in this case. We disagree. The only mention of "causation" in *Ramirez* is an isolated remark in a footnote:

> Because we conclude that there was no Fourth Amendment violation, we need not decide whether, for example, there was sufficient causal relationship between the [officers' entry] and the discovery of the [evidence] to warrant suppression. . . .

*Id.*, 118 S. Ct. at 997 n.3. The statement, by its own "we need not decide" language, is unquestionably a dictum. The Court expressly determined that there was no Fourth Amendment violation—e.g., that the officers' entry was proper—and disclaimed any consideration or application of a "causation" rule. And even if the Court's remark may be interpreted as recognizing that causation may be a question in some instances, it was neither deciding nor applying any such rule in *Ramirez*. We believe *Stevens* controls the issue.

¶ 11. Finally, the State argues that even if we conclude that there was a Fourth Amendment violation, the evidence seized should still be admissible under *Leon*, where the Court refused to apply the exclusionary rule to evidence obtained by law enforcement officers acting in objectively reasonable reliance upon a search warrant which was later ruled invalid

for lack of probable cause. *See id.* at 922. The State says the same rule should apply here, where the police, in breaking into the apartment, acted in good-faith reliance on the no-knock authorization in the warrant.

¶ 12. In the fifteen years since *Leon* was decided, the Wisconsin Supreme Court has never squarely faced the issue. The court had another opportunity this term in *State v. Ward*, 2000 WI 3, 231 Wis. 2d 723, 604 N.W.2d 517. In that case officers made an "unlawful no-knock entry" into Ward's residence. According to the supreme court, existing case law at the time the case arose countenanced such action, and the fact that those cases had since been overruled should not result in suppression of the evidence. In so ruling, the court never mentioned *Leon*, concluding instead that because the officers had relied on then-existing "pronouncements of this court," exclusion of the seized evidence "would serve no remedial objective." *Ward*, 2000 WI 3 at ¶ 63.[2]

¶ 13. We said in *State v. Grawien*, 123 Wis. 2d 428, 432, 367 N.W.2d 816 (Ct. App. 1985)—and in several subsequent cases—that for us to follow *Leon* would effectively overrule an earlier supreme court case, *Hoyer v. State*, 180 Wis. 407, 193 N.W. 89 (1923), where the court held that the Wisconsin Constitution required suppression of illegally-obtained evidence; and we emphasized that that is something we may not

_____

[2] The dissenters in *State v. Ward*, 2000 WI 3, 231 Wis. 2d 723, 604 N.W.2d 517, noted that, in their opinion, the majority "studiously avoid[ed]" any reference to *Leon*, 468 U.S. 897 (1984), despite its status as "the leading good faith case." *Ward*, 2000 WI 3 at ¶ 81 (Abrahamson, C.J., dissenting).

do.[3] We have followed that principle in several subsequent cases in which we have been asked to adopt the *Leon* rule. *See, e.g., State v. DeSmidt*, 151 Wis. 2d 324, 333, 444 N.W.2d 420 (Ct. App. 1989), *rev'd on other grounds*. We do so here, concluding once again that "[i]f the exclusionary rule stated in *Hoyer* is to be overruled, that is a function of our supreme court." *DeSmidt*, 151 Wis. 2d at 333 (citation omitted).

*By the Court.*—Order affirmed.

---

[3] Indeed, we noted in *State v. Grawien*, 123 Wis. 2d 428, 432, 367 N.W.2d 816 (Ct. App. 1985), that the supreme court itself has recognized that overruling *Hoyer v. State*, 180 Wis. 407, 193 N.W. 89 (1923), would be a necessary corollary to following *Leon*.