COURT OF APPEALS
DECISION
DATED AND FILED

October 22, 2020

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP188-CR**

Cir. Ct. No. **2018CT406**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

 V.

WILLIAM LAWRENCE BONFIGLIO,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Columbia County: TROY D. CROSS, Judge. *Affirmed*.

¶1 GRAHAM, J.[1] William Bonfiglio was arrested for operating a motor vehicle while intoxicated (OWI), and his blood was drawn for testing

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

pursuant to a warrant. He moved to suppress the blood test result on the ground that the officers used excessive force to execute the warrant. The circuit court denied his motion, and Bonfiglio was convicted of misdemeanor OWI. He appeals his conviction on the ground that the circuit court erred by denying his suppression motion. I affirm.

## BACKGROUND

¶2 In 2018, an officer stopped a vehicle for a speeding violation and identified the driver as Bonfiglio. At the time, Bonfiglio was 68 years old and had limited mobility due to hip problems. Based on a preliminary breath test result of .118 grams of alcohol per milliliter of blood and other indicia of intoxication, the officer arrested Bonfiglio for OWI.

¶3 During the arrest, the officer confiscated the inhaler he found on Bonfiglio's person. Bonfiglio became upset, complained of difficulty breathing, and asked for his inhaler to be returned. The arresting officer did not immediately do so; he instead called for emergency medical personnel. When the medical professionals arrived, they returned Bonfiglio's inhaler and gave him medical clearance.

¶4 Bonfiglio was brought to a hospital where his blood could be drawn to be tested for alcohol content. Due to his limited mobility, he was transported by wheelchair to a hospital bed. According to the arresting officer's later testimony, Bonfiglio was "belligerent" while at the hospital, making the process "as hard as possible," "swearing," and "disrupting … other rooms."

¶5 Pursuant to Wisconsin's implied consent law, the officer read Bonfiglio the "Informing the Accused" form, which explained that Bonfiglio

would be subject to penalties if he refused to consent to a blood draw. *See* WIS. STAT. § 343.305(4). Bonfiglio did not consent, nor did he give any other response. After the officer read the form three times and received no response, he applied for and obtained a warrant to draw Bonfiglio's blood. The warrant provided that "officers executing this search warrant are hereby authorized to use reasonable force to accomplish the execution of this search warrant."

¶6    Upon being presented with the warrant, Bonfiglio said, "You're going to have a hard time doing that," or words to that effect. According to Bonfiglio, he intended this to mean that it was difficult to draw blood from his veins. The officer later testified that he interpreted this statement as a sign that Bonfiglio intended to resist the blood draw. The officer also testified that he did not recall whether he asked any questions to clarify what Bonfiglio meant by this statement.

¶7    The arresting officer sought the assistance of another officer who was present, and together, they immobilized Bonfiglio's arms by holding them down against the side of the hospital bed. The parties refer to this as an "escort hold," and I will also use that term. No evidence was introduced as to how long the escort hold lasted, and at some point, Bonfiglio indicated that he would comply with the blood draw. The officers released his arms and his blood was drawn without incident.

¶8    The State charged Bonfiglio with misdemeanor OWI, and he moved to suppress the blood test result on the ground that the force used by the officers was excessive. The sole evidence presented at the suppression hearing was the testimony of the arresting officer.

¶9    The circuit court denied the suppression motion. The court made no determination as to the meaning of Bonfiglio's statement that the officers would have a "difficult time" drawing his blood; rather the court determined that it did not matter whether Bonfiglio intended to resist because presumably, officers had already used a similar level of force during the arrest:

> Whether [Bonfiglio's statement] meant he was going to fight them or whether that meant he has difficult veins to find is not particularly relevant at this point because the officers simply grabbed his arms. He's already been grabbed by the officers and placed in handcuffs presumably to get in the back seat of the squad car. The simple fact that they're grabbing his arms to make sure that he complies with the blood draw at this point is not unreasonable.

The court also noted that there was no testimony on the duration of the escort hold: "whether it was a mere 15 seconds, five seconds, three minutes. I don't know." However, it determined that the lack of evidence on this issue was unimportant because the record did not indicate that the hold "unreasonably or unduly caused Mr. Bonfiglio some type of injury."

¶10    Bonfiglio moved for reconsideration, and the court denied his motion. He then pleaded no contest and was convicted. He appeals the conviction on the ground that the circuit court should have suppressed the result of his blood test.

## DISCUSSION

¶11    The review of an order granting or denying a suppression motion presents a question of constitutional fact. *State v. Johnson*, 2013 WI App 140, ¶6, 352 Wis. 2d 98, 841 N.W.2d 302. We uphold the circuit court's findings of fact

unless they are clearly erroneous, and we review de novo the application of constitutional principles to those facts. ***Id.***

¶12    The Fourth Amendment prohibits unreasonable searches and seizures by the government. U.S. CONST. amend. IV. When law enforcement collects a blood sample for chemical testing, it conducts a "search" for the purposes of the Fourth Amendment. ***Schmerber v. California***, 384 U.S. 757, 767 (1966). If a search or seizure violates a defendant's Fourth Amendment rights, the remedy is generally suppression of the evidence. *See* ***State v. Keith***, 2003 WI App 47, ¶8, 260 Wis. 2d 592, 659 N.W.2d 403.

¶13    Bonfiglio argues that the blood test result must be suppressed because the officers used excessive force to execute the warrant authorizing the blood draw. He appears to draw on two sources of authority for this proposition. First, he relies on ***State v. Krause***, 168 Wis. 2d 578, 484 N.W.2d 347 (Ct. App. 1992), a case that specifically pertains to whether excessive force was used to draw an individual's blood. Second, he relies on more general case law that pertains to the reasonableness of force used to carry out a search or seizure.

¶14    Before turning to these arguments, I first address the parties' arguments about the burden of proof. Bonfiglio argues that the circuit court impermissibly placed the burden on him to prove that the officers used unreasonable force, and that the court should instead have placed the burden on the State to prove that the force was reasonable. But the authority Bonfiglio cites

does not establish that the State bears this burden.[2]  For reasons I explain below, I assume without deciding that the burden was on Bonfiglio.

¶15     To be sure, suppression motions frequently turn on issues for which the State bears the burden of proof.  *See, e.g.*, *State v. Kieffer*, 217 Wis. 2d 531, 541, 577 N.W.2d 352 (1998) (noting that "[t]he State has the burden to prove that a warrantless search was reasonable and in compliance with the Fourth Amendment"); *see also State v. Jiles*, 2003 WI 66, ¶26, 262 Wis. 2d 457, 663 N.W.2d 798 (noting that the State bears the burden to prove that a defendant's custodial statements are voluntary).

¶16     But this case involves a different issue—the officer obtained a warrant for the search, and Bonfiglio challenges the search on the ground that the "officers exceeded the scope of the warrant."  Under similar circumstances, our supreme court appears to have placed the burden of proof on the defendant.  *See State v. LaCount*, 2008 WI 59, 310 Wis. 2d 85, 750 N.W.2d 780.  In *LaCount*, the defendant moved to suppress evidence on the ground that the police "exceeded the

---

[2]  Bonfiglio cites three cases for this proposition, each of which addresses a challenge to "no knock" entry into a home by the police.  *See United States v. Ramirez*, 523 U.S. 65 (1998); *State v. Eason*, 2000 WI App 73, 234 Wis. 2d 396, 610 N.W.2d 208, *rev'd*, 2001 WI 98, 245 Wis. 2d 206, 629 N.W.2d 625; and *State v. Stevens*, 213 Wis. 2d 324, 570 N.W.2d 593 (Ct. App. 1997), *aff'd and remanded*, 217 Wis. 2d 369, 577 N.W.2d 335 (1998), and *aff'd and remanded* 217 Wis. 2d 518, 580 N.W.2d 688 (1998).  Bonfiglio cites these cases without analysis, and he does not point to any language that actually places the burden on the State to show that a warrant was reasonably executed.

The common thread between these cases appears to be that they all discuss the principle that, to justify "no-knock" entry into a home, the State must show that there was reasonable suspicion that knocking and announcing the officers' presence would be dangerous or futile, or would inhibit effective investigation.  *See Ramirez*, 523 U.S. at 67-68; *Eason*, 234 Wis. 2d 396, ¶7; *Stevens*, 213 Wis. 2d at 331.  To the extent that this principle places an evidentiary burden on the State with regard to the execution of a warrant, Bonfiglio does not explain how it would extend beyond the context of a warrant for entry into a home.

scope of the warrant," and the court stated that it was his burden to prove that his Fourth Amendment rights had been violated "by the search and seizure in question." *Id.*, ¶37; *cf.* 6 WAYNE R. LAFAVE, SEARCH & SEIZURE § 11.2(b) (6th ed. 2020) (noting that most states follow the general rule that, in a suppression hearing, "if the search or seizure was pursuant to a warrant, the defendant has the burden of proof; but if the police acted without a warrant the burden of proof is on the prosecution").

¶17     Accordingly, on its face, *LaCount* appears to place the burden on a defendant who challenges the execution of a warrant. Because Bonfiglio cites no authority for a contrary rule and develops no argument as to why *LaCount* should not apply, I assume that he bears the burden of proof.

### I. *State v. Krause*

¶18     Both parties cite to and rely on *Krause*, 168 Wis. 2d 578, but for reasons I now explain, I am not persuaded that that case is on point. In *Krause*, the defendant actively resisted a warrantless blood draw by kicking and spitting at the officers, and the officers eventually "placed a pillowcase over Krause's head, tied his feet down and held his arms while a medical technician drew [the] blood …." *Id.* at 584-85. On review, we considered "whether the manner in which the blood was taken was reasonable," and we articulated a list of factors to guide that determination. *Id.* at 588-89.

¶19     Here, however, the issue is not the "manner in which the blood was taken"—no evidence was introduced to show that the blood draw itself was unreasonable or unusual in any way. Instead, the police used force *prior to* the blood draw to demonstrate that they had physical control over Bonfiglio and could take his blood by force if required. Thus, the point was to compel compliance by a

show of force. The situation is analogous to force used to compel compliance in other contexts not involving a blood draw—for example, if the officers were attempting to handcuff or fingerprint Bonfiglio and believed he would resist. Therefore, I am not persuaded that *Krause*, which specifically concerns the manner in which a defendant's blood was taken, governs the inquiry in this case. The question in this case is broader: whether the officers used reasonable force to execute the warrant. Accordingly, I look to the body of case law that addresses whether the execution of a warrant was reasonable.[3]

## II. Whether the Officers Reasonably Executed the Warrant

¶20    When officers execute a search or seizure pursuant to a warrant, they must do so "reasonably." *State v. Sveum*, 2010 WI 92, ¶19, 328 Wis. 2d 369, 787 N.W.2d 317. "Whether a search was reasonably executed is determined by considering the 'totality of the circumstances.'" *State v. Pinder*, 2018 WI 106, ¶53, 384 Wis. 2d 416, 919 N.W.2d 568 (quoting *United States v. Banks*, 540 U.S. 31, 35-36 (2003)). "Unreasonable actions include the use of excessive force or restraints that cause unnecessary pain or are imposed for a prolonged and unnecessary period of time." *Los Angeles Cnty., California v. Rettele*, 550 U.S. 609, 614 (2007). Determining whether force is excessive "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth

---

[3] Even if I were to conclude that this case is governed by *Krause*, Bonfiglio's argument that the warrant was not reasonably executed under *Krause* would still fail for substantially the same reasons discussed in Section II.

It is not clear whether Bonfiglio intends to argue that *Krause* provides a separate and independent basis for suppressing the blood test result regardless of whether the warrant was reasonably executed. To the extent that Bonfiglio intends to make such an argument, I reject it as undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (the court need not address undeveloped legal arguments on appeal).

Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)). The reasonableness of "a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396.

¶21 The circuit court's ruling turned on its determination that the force the officers used was relatively minor, and therefore, it did not matter whether the officer reasonably believed that the force was necessary to execute the warrant. For the following two reasons, I disagree.

¶22 First, considering the "totality of the circumstances," the force that was used was not minimal, even assuming it lasted only a very short time. Bonfiglio was an elderly man with limited mobility who had complained of breathing difficulties, and he had already displayed distress when the arresting officer confiscated his inhaler. By immobilizing Bonfiglio's arms, the officers again restricted Bonfiglio's access to his inhaler. Under these circumstances, a reasonable officer would be aware that even if the escort hold did not cause physical discomfort, it could have caused significant emotional distress.

¶23 Second, the circuit court's reasoning suggests that force may be used to execute a warrant even when a reasonable officer would not believe it necessary to use any force at all. But as explained above, a court must balance the individual's privacy interests against the government's interests when determining whether the force used to execute a warrant is excessive. If no force is needed to execute the warrant, it is difficult to see how the use of force could serve any legitimate government interest. Consequently, it is difficult to see how the

9

government's interests could outweigh the individual's interest under such circumstances.

¶24    Although I disagree with the circuit court's reasoning, I nevertheless conclude, for the reasons below, that the court properly denied Bonfiglio's suppression motion.

¶25    Bonfiglio argues that the circuit court erred because it "basically resolv[ed] all of the State's [evidentiary] shortcomings" in the State's favor. Among other things, he points to a lack of evidence about the duration of the escort hold, a lack of evidence about whether Bonfiglio suffered pain or injury, and a lack of any evidence other than the arresting officer's testimony. Yet, as explained above, Wisconsin law appears to put the burden on Bonfiglio to show the warrant was not reasonably executed. Therefore, these evidentiary "shortcomings" weaken his case, not the State's.

¶26    Bonfiglio's primary argument is that force was not required because the evidence does not show that he intended to resist the blood draw. Accordingly, whether the use of force was reasonable turns on whether it was reasonable for the arresting officer to believe, based on the totality of the circumstances, that Bonfiglio intended to resist.[4]    Bonfiglio argues that the circumstances do not support such a belief, but again, his arguments appear to depend on the unsupported premise that the State bears the burden of proof. When that burden is instead placed on Bonfiglio, his arguments fail.

_____

[4] Bonfiglio does not appear to develop any clear argument that the escort hold constituted excessive force even assuming that it was reasonable for the officers to believe he intended to resist.

¶27    The State argues that the officer reasonably believed that Bonfiglio intended to resist the blood draw based on his belligerent behavior, and on his statement that the officer would have a "difficult time" drawing his blood. Bonfiglio's arguments to the contrary are unavailing.

¶28    First, Bonfiglio contends that the State offered "[n]o consistent or reliable testimony" that he had been belligerent. However, the arresting officer specifically testified that Bonfiglio had been belligerent and disruptive at the hospital. Although Bonfiglio questions the officer's credibility on this point, he introduced no evidence to contradict the officer's version of the events.[5] In any event, appellate courts ordinarily do not resolve questions about witness credibility, *see **State v. Hughes***, 2000 WI 24, ¶2 n.1, 233 Wis. 2d 280, 607 N.W.2d 621, and the circuit court made no finding that the officer's testimony was not credible.

¶29    Second, Bonfiglio argues that the officers should not have interpreted his statement that they would have a "difficult time" drawing his blood as demonstrating an intent to resist the blood draw. Bonfiglio argues that his statement was "vague and nebulous," and that the officers "failed to even ask him

---

[5] Bonfiglio argues that the arresting officer's testimony was not credible because it "contravened his report," which, according to Bonfiglio, made no mention of belligerent behavior. But the incident report was not made part of the record, and Bonfiglio's cross examination of the officer on this topic was limited to confirming that the report did not specifically mention that Bonfiglio was "repeatedly swearing." This does not establish a contradiction or even an inconsistency with the officer's testimony that Bonfiglio was "belligerent."

Bonfiglio also appears to suggest that the officer's testimony was not credible because he was in training at the time of the incident, and he was no longer employed with the police at the time of the suppression hearing because he had failed to complete field training. The circuit court could have considered these facts in assessing credibility, but Bonfiglio does not explain why these facts would require an appellate court to discredit uncontroverted testimony.

11

what he meant." Yet the evidence is ambiguous on this point—the arresting officer testified only that he did not recall whether either of the officers asked any clarifying questions. And even if they did not, Bonfiglio did not introduce any evidence of his own to support his proffered interpretation of his statement,[6] nor does he explain why the officers' interpretation was unreasonable in the context of his prior belligerent behavior.

¶30 As shown above, Bonfiglio's arguments rely on the unsupported premise that it is the State's burden to show that the force used was reasonable and that I should resolve evidentiary gaps in the record against the State. For the reasons explained above, I assume that the burden was actually on Bonfiglio to show that the execution of the warrant was unreasonable, and I conclude that he has not met that burden.

## CONCLUSION

¶31 For all these reasons, I conclude that the circuit court did not err by denying Bonfiglio's suppression motion.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[6] Additionally, Bonfiglio introduced no evidence to suggest that he actually intended his statement to mean that his veins were difficult to draw blood from. His attorney's questions during the hearing appeared to suggest that the technician who drew Bonfiglio's blood interpreted his statement along those lines, but Bonfiglio did not call the technician to testify to this fact.